# HOBART CHATFIELD TAYLOR

v.

# ALBERT KEEP ET AL.

1. CONSTRUCTION OF WILLS — EXECUTION OF TRUSTS BY A COURT OF CHANCERY.—It is a general principle that courts of equity carry trusts into execution only when they are certain and definite in their character; and if a trust is created which by its terms is so vague and indefinite that a court of equity cannot clearly ascertain either the objects or the persons who are to take, such trust will entirely fail, and the property will fall into the general funds of the author of the trust.

2. EXCEPTIONS TO THE RULE—CHARITABLE BEQUESTS.—Trusts for charitable purposes, however, will be upheld although expressed with great generality and vagueness, but this exception is strictly limited to trusts for charity; and in order to give them validity, the language employed must require that the fund be expended for some *charity* according to the legal signification of the word, and for nothing else. So if the language of the gift leaves to the trustee a discretion to expend the fund for a purpose non-charitable, or for purposes partly charitable and partly non-charitable, it will not be upheld.

3. MEANING OF THE WORD "CHARITY"—STATUTE OF ELIZABETH IN FORCE IN THIS STATE.—The word "charity" in its widest sense, denotes all the good affections which men ought to bear towards each other, and in this sense it embraces all that is usually understood by the words benevolence, philanthropy and good will; but the statute of 43 Elizabeth, commonly known as the statute of Charitable Uses, is in force in this State; and one of the results accomplished by it being the establishment of an enumeration or kind of definition, standard or test, to which all gifts and grants in trust could be brought in order to determine whether they were charitable, no bequests, since that statute, are deemed within the authority of chancery and capable of being established and regulated thereby except for purposes within the enumeration of the statute, or which by analogy come within its spirit and intendment.

4. RULE FOR CONSTRUING CHARITABLE BEQUEST.—In giving construction to the language of a will containing a charitable bequest, if it be found that the testator devoted his bounty definitely and entirely to charity, according to the legal signification of the word, leaving to his trustees no discretion to devote the fund in any event to a purpose not charitable, it must be upheld as a bequest to charity, notwithstanding the uncertainty and indefiniteness of the beneficiaries; but if, on the other hand, there appears to have been a purpose to vest in his trustees a discretion to devote the fund, in any event, or under any circumstances, to a purpose not included within the legal definition of the word, such bequest is too uncertain and indefinite to be upheld.

5. STATEMENT—LANGUAGE OF THE BEQUEST.—The testator, by the sixth clause of his will, directed that fifty thousand dollars be invested, the increase

Taylor v. Keep et al.

thereof to be paid to his son during his lifetime, and on the death of the son, the principal sum to descend to his children, "if he have any, but to the charitable institution hereinafter mentioned (or such other charitable institution as my executors shall designate), in case my said son shall die without issue." By the ninth clause of said will, the residue, after payment of legacies mentioned was given to certain persons therein named, "*in trust*, the same to be by them applied and devoted to the founding or endowing * * * of such a charitable or other institution as in their opinion * * * is most needed * * * and if they shall be unwilling, or deem it expedient to organize a new charity, they may duly certify the same to my administrators or executors, who shall then pay over the same to the lawful managers or trustees of 'The Home for the Friendless,' in said city of Chicago."

6. CONSTRUCTION.—As to the bequest mentioned in the ninth clause, *held*, that there is a clear and manifest intention to vest the trustees with a discretion to devote the fund to a charitable or non-charitable purpose, and that such bequest, so far as the trustees are concerned, is void for uncertainty; and that the same indefiniteness pervading the bequest in the hands of the trustees, extends to and vitiates the provisions of the same clause relating to the Home for the Friendless; and such bequest cannot be enforced by a court of chancery.

7. DOCTRINE OF CY PRES.—Neither can such bequest be supported under the doctrine of *cy pres*, for it is not a case of a bequest to charity and a failure of the particular mode in which that charity is to be effected. The doctrine of *cy pres* cannot be resorted to for the purpose of modifying and restraining the intention of the testator, but where there is an express devise to charity and a failure in the mode of its application, the court under the *cy pres* power will substitute another mode of devoting the property to charitable purposes.

8. CONSTRUCTION OF SIXTH CLAUSE.—As to the bequest mentioned in the sixth clause, *held* that the manifest intention of the testator being to devote the devise to charity, and nothing else, and a charitable institution—The Home for the Friendless—being named in the will, the executors, in the event of the son dying without issue, might give such bequest to that charity, or select another; that it is a valid bequest to charity, and should be sustained as such.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

Mr. JOHN N. JEWETT for appellant; contending that the provisions of the ninth clause do not make a bequest for the benefit of the persons therein named; that they take as trustees and not beneficially, cited Morice v. Bishop of Durham, 9 Ves. Jr. 405.

As a devise in trust, it is absolutely void, because no beneficiaries are designated: Perry on Trusts, § 116; 2 Story's Eq.

Taylor v. Keep et al.

§§ 979, 1071; Malim v. Keighley, 2 Ves. Jr. 335; Stubbs v. Sargon, 2 Keen, 255; Ommanney v. Butcher, 1 Turn. & Russ. 260; Wheeler v. Smith, 8 How. 79.

The devise cannot be sustained as a bequest to charity or charitable uses, as no part of the fund is impressed with the character of a charitable donation: Heuser et al. v. Harris et. al. 42 Ill. 425; 16 Ill. 225; Perry on Trusts, § 692; 2 Story's Eq. § 1164; 2 Redfield on Wills, 505; Hill on Trustees, * 81, 450; 1 Jarman on Wills, * 316; Morice v. Bishop of Durham, 9 Ves. Jr. 399; Moggridge v. Thackwell, 7 Ves. Jr. 16; James v. Allen, 3 Mer. 17; Flint v. Warren, 15 Sim. 626; Ellis v. Selby, 1 Mylne & Craig, 286; Vezey v. Jamson, 1 Sim. & Stu. 69; Fowler v. Garlike, 1 Russell & Mylne, 232; Heiss v. Murphy et al. 40 Wis. 276; Norris v. Thompson's Ex'r, 4 C. E. Green; White v. Fisk et al. 22 Conn. 31; Chamberlain et al. v. Stearns et al. 111 Mass. 167; Adye v. Smith, 44 Conn. 60; Williams v. Kershaw, 5 Cl. & Fin. 111; Kindall v. Granger, 5 Beav. 300; West v. Shuttleworth, 2 Mylne & K. 684; Att'y Gen. v. Haberdasher Co. 1 Mylne & K. 421; Grimes' Ex'rs v. Harmon et al. 35 Ind. 198; Lepage v. Macnamara, 5 Iowa, 124; Wheeler v. Smith, 9 How. 55; Bridges v. Pleasants, Ired. Eq. 26.

If the provision cannot be sustained as a devise in trust, nor to charity, it is wholly void, and the fund reverts to the heir at law: Prescott v. Prescott, 7 Met. 146; 2 Redfield on Wills, 176.

Mr. Wirt Dexter and Mr. John J. Herrick, for the executors, appellees, upon the legal meaning of the word charity, cited: Magill v. Brown, Bright (Pa.) 346; Burr's Ex'rs v. Smith, 7 Vt. 241; Vidal v. Philadelphia, 2 How. 128; Ould v. Washington Hospital for Foundlings, 5 Otto, 303; Heuser v. Harris, 42 Ill. 426; Perry on Trusts, § 698; Jones v. Williams, Amb. 652; Coggeshall v. Pelton, 7 Johns. Ch. 294; Milford v. Reynolds, 1 Phil. Ch. 192; Perin v. Carey, 24 How. 506; Theobald on Wills, 181; Price v. Maxwell, 28 Pa. St. 35; Girard Will Case, 41; Jackson v. Phillips, 14 Allen, 556; Gilman v. Hamilton, 16 Ill. 225.

The bequest should be construed according to the intention

of the testator, and as to the mode of determining such intention: 1 Redfield on Wills, 442; Perry on Trusts, § 709; Rotch v. Emerson, 105 Mass. 433; Magill v. Brown, Bright (Pa.) 407; Dolan v. McDermott, 3 Ch. App. 676; Saltonstall v. Sanders, 11 Allen, 446; Whicker v. Hume, 7 H. L. Cas. 162.

Where the general intent of the testator is clear, and it is impracticable to give effect to all the language of the instrument, expressive of some particular intent, the latter must yield to the former: 1 Redfield on Wills, 433; Pond v. Bergh, 10 Paige Ch. 152; Wicker v. Hume, 7 H. L. Cas. 124.

A devise authorizing an application of funds to "benevolent purposes," is a valid devise to charity: Att'y Gen. v. Comber, 2 Sim. & Stu. 93; Jemmett v. Verril, Amb. 585; Hill v. Burns, 2 Wils. & Shaw, 8; Chrichton v. Grierson, 3 Bligh. 434; Miller v. Rowan, 5 Clark & Fin. 99; Saltonstall v. Sanders, 11 Allen, 465; DeCamp v. Dobbins, 6 Cent. Law Jour. 449.

The bequest is sufficiently certain to be executed: Fontain v. Ravanel, 17 How. 384; Miller v. Teachout, 24 Ohio St. 534; Treat's Appeal, 30 Conn. 113; Perry on Trusts, § 720.

The bequest in the sixth clause of the will can be sustained as an executory trust: Perry on Trusts, § 359; Theobald on Wills, 405; 3 Redfield on Wills, 530.

Mr. David Fales, for The Home for the Friendless; argued that the bequest in the ninth clause not being for a purely charitable purpose, is void, and cited 2 Story's Eq. §§ 979, 1164; Perry on Trusts, § 696; Ellis v. Selby, 7 Sim. 352; Vesey v. Jameson, 1 Sim. & Stu. 69; Gibbs v. Rumsey, 2 Ves. & B. 294; Morice v. Bishop of Durham, 9 Ves. 399; James v. Allen, 3 Mer. 17; Adye v. Smith, 44 Conn. 60; Thompson v. Norris, 5 C. E. Green, 489; 2 Roper on Legacies, 1237; Williams v. Kershaw, 5 Cl. & Fin. 104; Cox v. Bassett, 3 Ves: 155; Kendall v. Granger, 5 Beav. 300; Tudor's Charitable Uses, 223; Boyle on Charities, 281; Nash v. Morley, 5 Beav. 182; Mitford v. Reynolds, 1 Phillips, 185; Chamberlain v. Stearns, 111 Mass. 267; Vidal v. Girard, 2 How. 195; Baptist Ass'n v. Hart, 4 Wheat. 1; Jackson v. Phillips, 14 Allen, 539; Rose Will Case; Babb v. Reed, 5 Rawle, 15; 2 Jarman on Wills, 762;

Taylor v. Keep et al.

Powell on Devises, Rule 10; Williams on Executors, § 978; 1 Redfield on Wills, 433; Chambers v. Brailsford, 19 Ves. 654; Peacock v. Steckford, 3 De. G. M. & G. 73; Brown v. Lyon, 6 N. Y. 419; Corrigan v. Kierman, 1 Bradf. Sur. 208.

The particular bequest to found or endow a charitable or other institution being void in the trustees, it must go to the Home for the Friendless, as the object of the testator's bounty clearly expressed: 2 Williams on Executors, § 1310; Hill on Trustees, 134; 2 Redfield on Wills, 496; Perry on Trusts, § 160.

Where there is a devise to charity generally, and the particular purpose fails, there will be no resulting trust to the next of kin: Perry on Trusts, §744; 2 Redfield on Wills, 518; Sanderson v. White, 18 Pick. 328; Hill on Trustees, 123; Moggridge v. Thackwell, 7 Ves. 69; Mills v. Farmer, 1 Mer. 55; Story's Eq., 1168; Duke on Charitable Uses, 466.

A gift to a charitable institution will be presumed to be a charitable gift, though no purpose is named: Everett v. Carr, 59 Me. 325; Evangelical Ass'n App. 35 Penn. 316; Burr v. Smith, 7 Ves. 241; Earl v. Wood, 8 Cush. 430; Dexter v. Gardner, 7 Allen, 243; Hendrickson v. DeCow, Sax. 577.

Where the object is charity, a less accurate and definite declaration of intention will suffice to create a trust against the next of kin, than would be required in other cases for that purpose: Hill on Trustees, 121; Morice v. Bishop of Durham, 9 Ves. 405; Mills v. Farmer, 1 Mer. 94.

If the will points to any particular charity, the court ought not to direct it to any other purpose: Mills v. Farmer, 1 Mer. 94; Att'y Gen. v. Syderfin, 1 Vernon, 224; 2 Frem. Cas. 330.

When the particular purpose fails, there will be a *cy pres* application to such purpose as will be supposed to come nearest the intention of the donor: Hill on Trustees, 462; Att'y Gen. v. Boultree, 2 Ves. 379; Baptist Ass'n v. Smith, 4 Wheat. 1; Heuser v. Harris, 42 Ill. 425; Bishop of Hereford v. Adams, 7 Ves. 324; Att'y Gen. v. Baloil Coll. 9 Mod. 407; Martin v. Morghan, 14 Sim. 230; Gilman v. Hamilton, 16 Ill. 225.

The question of general intention in favor of charity must be gathered from the entire will: Hill on Trustees, 451; De Themines v. De Bonneval, 5 Russ. 288; Att'y Gen. v. Bishop

Taylor v. Keep et al.

of Oxford, 1 Bro. Ch. 444; Att'y Gen. v. Grocers Co. 12 Law Jour. 196.

Where the legacy is to charity, the court will consider charity as the substance, and if the mode pointed out fails, will provide another mode by which it may take effect: Story's Eq. § 1167; Mills v. Farmer, 1 Mer. 94; Moggridge v. Thackwell, 7 Ves. 36; Att'y Gen. v. Ironmongers Co. 2 Beav. 318; Heuser v. Harris, 42 Ill. 425; 2 Roper on Legacies, 175; Boyle on Charities, 220; Tiffany and Bullard on Trusts, 732; Att'y Gen. v. Hickman, 2 Eq. Cas. 193; Att'y Gen. v. Glegg, 1 Atk.

In the case of a charity bequest, the court will assume the office of executor on the failure or refusal of the trustee to act; Hill on trustees, 486; Gower v. Mainwaring, 2 Ves. Sen. 87; Moggridge v. Thacknell, 7 Ves. 36; Heuser v. Harris, 42 Ill. 425; 2 Story's Eq. 1165; Mills v. Farmer, Mer. 55; White v. White, 1 Bro. C. C. 12; Atty. Gen. v. Andrews, 3 Ves. 633; Atty. Gen. v. Boultbee, 2 Ves. 380; Comm. v. Sullivan, 1 D. & Marr. 501; 2 Freeman Ch. Cas. 330; Atty. Gen. v. Stephens, 3 Mylne & K. 347; Ommanney v. Butcher, 1 T. & Russ, 151; 3 P. W. 146; 1 Atk. 164.

An estate limited in default of appointment, is during the continuance of the power unexecuted, vested, subject to be divested by the exercise of the power: 4 Tenn. R. 39; Cunningham v. Moody, 1 Ves. 175; Madoc v. Jackson, 2 Bro. C. C. 588; Rooke v. Rooke, 2 Eden, 8; Maundrell v. Maundrell, 10 Ves. 265; Sugden on Powers, 453; 4 Kent's Com. 324; Fearne on Contingent Remainders, 290; Perry on Trusts, § 744.

BAILEY J. This suit was brought to obtain a construction and a determination as to the validity of certain of the provisions of the will of Henry Hobart Taylor, deceased. On the ninth day of November 1875, said Taylor departed this life, leaving him surviving, Adelaide C. Taylor, his widow, and Hobart Chatfield Taylor, his only child, and sole heir-at-law; and also leaving his last will and testament, whereby he sought to dispose of his entire estate, amounting in value, as is estimated, to three-quarters of a million of dollars, or thereabouts.

The will consists of nine sections, and the present controversy

depends entirely upon the legal effect to be given to the sixth and ninth sections. Those portions of the will in respect to which no question is now made, are substantially as follows: By the first section, Albert Keep, Henry F. Eames and Henry W. King, were appointed executors of the will and trustees thereunder, and charged with its due execution. The second section directs the conversion of all the testator's property not otherwise in said will disposed of into money, and the re-investment of the proceeds, after the payment of debts and funeral expenses, in strictly first class, interest-bearing securities, not liable to loss by fire or theft, and the making of suitable arrangements for the payment of the annuities and legacies given in the subsequent portions of the will. The third section gives to said widow the testator's household furniture, and sundry other articles of personal property. The fourth directs the settlement upon said widow of a sum equal to one-third of the net proceeds of the testator's remaining estate (or at least two hundred thousand dollars, if said estate should yield less than six hundred thousand dollars), so that she should receive the income, or interest thereof semi-annually, during the whole of her natural life, the principal sum and increase thereof to descend, at her death, to said Hobart Chatfield Taylor, in case he should survive her; but in case said widow should survive said son, then it was provided that at her death, said principal sum should " revert to and be devoted or fall to such charitable institution as may be founded in pursuance of the provisions hereinafter contained." It was provided, however, that if said settlement upon said widow was not acceptable or satisfactory to her, she should, in lieu thereof, receive at once full control and possession of an entire one-third of said estate, without restrictions or conditions. The fifth section devised to said Hobart Chatfield Taylor, in fee, a certain lot of land in Chicago; the seventh settled a certain annuity on the mother of the testator, and the eighth gave to the widow the custody of said son, who then was and still is, a minor, until his majority. The sixth and ninth sections of said will are as follows:

" *Sixth.* I further settle and direct that my said executors or trustees, shall settle upon my said son, Hobart C. Taylor, a

Taylor v. Keep et al.

further principal sum of fifty thousand dollars, to be invested in such manner and form (in interest-bearing securities), that the interest thereon shall enure to my said son, semi-annually, during the whole of his natural life, and that at his death, the aforesaid principal sum shall fall to his children, if he have any, but to the charitable institution hereinafter mentioned (or to such other charitable institution as my executors shall designate), in case my son shall die without issue."

"*Ninth.* All the rest, residue and remainder of my estate, whatsoever, that may remain after fully providing for the payment of the debts, expenses, legacies, annuities and settlements, or other disbursements hereinbefore indicated or mentioned, according to to the spirit of what I have written, I do give, devise and bequeath to Henry W. King, Henry F. Eames, Albert Keep, Wirt Dexter, O. S. A. Sprague, Thomas M. Avery, Henry Keep, and Hamilton B. Bogue (all of the city of Chicago and county of Cook), in trust, the same to be by them applied and devoted to the founding or endowing here, in the city of Chicago, upon a lasting basis, of such charitable or other institution, as in their opinion (or in the opinion of a majority of them), is most needed, and will do the most positive and enduring good, and the least harm; provided, that if any or either of the nine trustees above named shall die before this will comes into effect, or before a permanent organization of such proposed charity is effected, that the survivors shall have full power to select persons to fill vacancies in their number; and provided, further, that if the majority of said trustees shall be unwilling or deem it inexpedient to organize a new charity, they may duly certify the same to my administrators and executors, who shall then pay over the same to the lawful managers or trustees of 'The Home for the Friendless,' in the said city of Chicago."

To test the validity of the trust created by the ninth section of the will, as well as of the possible appropriation to charitable uses of the bequest given by the sixth section, said Hobart Chatfield Taylor, by his next friend, exhibited in the Circuit Court of Cook County, his bill in chancery against the executors and trustees named in the will, and The Home for the

Friendless, charging that the provisions of said ninth section are inoperative and void, by reason of the uncertainty and indefiniteness of the beneficiaries thereunder, and praying to be decreed to be entitled, as heir-at-law of said testator, to the property embraced in said residuary bequest; and also praying that the contingent bequest to charity of the fund mentioned in the sixth section be declared void by reason of the want of definiteness as to the beneficiaries thereof, and that said fund be decreed absolutely to the complainant for his own use and benefit. A cross-bill was afterwards filed by said executors, and also by The Home for the Friendless, the former insisting upon the validity of the will and of the trust thereby vested in said trustees, and praying for a corresponding construction of said sections, and the latter claiming that the provisions of said ninth section are inoperative and void as a bequest for founding or endowing a charitable or other institution, and that said Home for the Friendless is alone entitled to receive the same, and praying for a decree to that effect. Issues were duly formed on the original bill and cross-bills, and on final hearing a decree was entered dismissing the original bill, and also the cross-bill of The Home for the Friendless, and construing said will in accordance with the prayer of the cross-bill of the executors. From this decree both said Hobart C. Taylor and The Home for the Friendless have appealed to this court.

It is a well settled general principle of law that courts of equity carry trusts into execution only when they are certain and definite in their character. If a trust is created, which by its terms is so vague and indefinite that courts of equity cannot clearly ascertain either the objects or the persons who are to take, such trust will be held to entirely fail, and the property will fall into the general funds of the author of the trust. 2 Story's Eq. Juris. § 979 a; Wheeler v. Smith, 9 How. (U. S.) 55, 79. To this general rule, trusts for charitable purposes are undoubtedly an exception. Such trusts are upheld, although expressed with great generality and vagueness. Thus a gift or devise made without any purpose being specified beyond the general intention that it be applied to a charitable purpose, will be upheld, and in such case, if a trustee is appointed with.

discretionary powers, he may select the charity to be established, and determine the manner in which it shall be administered.

The exception, however, is strictly limited to trusts for purposes of charity, and in order that a gift or devise to charity should possess that certainty which will give it validity, the language employed must require that the fund be expended for some charity according to the legal signification of that word, and for nothing else. If the language of the gift or devise leaves to the trustee a *discretion* to expend the fund for a purpose non-charitable, or for purposes partly charitable and partly non-charitable, it will not be upheld. In such case the trustee *may* expend the whole fund for a purpose which is not charitable, and at the same time execute the exact power given him under the will. The language employed by the devisor must devote the fund definitely and entirely to charity, and if it fails so to do, the courts cannot establish or administer the fund as charitable.

The word *charity*, in its widest sense, denotes all the good affections which men ought to bear towards each other, and in this sense it embraces all that is usually understood by the word benevolence, philanthropy and good will. In its more restricted sense it means merely relief or alms to the poor. In neither of these senses is it employed by the courts when used as descriptive of those uses and trusts which will be upheld as charitable. The words *charity* and *charitable uses*, at least in this State, where the statute of 43 Elizabeth, chap. 4, commonly known as the Statute of Charitable Uses, is held to be in force, must be determined with reference to the provisions of that statute. Among the results accomplished by the statute of Elizabeth was the establishment of an enumeration or kind of definition, standard or test, to which all gifts and grants in trust could be brought in order to determine whether they were charitable. Accordingly, since the statute, no bequests are deemed within the authority of chancery and capable of being established and regulated thereby, except bequests for those purposes which the statute enumerates as charitable, or which, by analogy, are deemed to be within its spirit or intendment. Perry on Trusts, §§ 696, 697; 2 Story's Eq. Juris. § 1155. It

is true, many purposes not enumerated in the statute have been held to be charitable on the ground that though not within its letter, they are within its spirit, intention and principle.  On the other hand, many objects of a general nature, though laudable and beneficent in their character, and of general utility, are held not to be included within the legal definition of charity.

In giving construction to the will before us, if it be found that the language employed by the testator, devoted his bounty definitely and entirely to charity, according to the legal signification of the word, and left to his trustees no discretion to devote the fund, in any event to any purpose not charitable, it must be upheld as a bequest to charity, notwithstanding the uncertainty and indefiniteness of the beneficiaries to whose use it is to be applied. / If on the other hand it appears to have been the purpose and intention of the testator to vest in his trustees a discretion to devote the fund, in any event, or under any circumstances to a purpose not included within the legal definition of charity, his bequest is too uncertain and indefinite to be sustained, and must be held to be void.

In determining the purpose and intention of the testator, the language which first demands our attention is that by which he describes the institution which he directs his trustees to found and endow, and by which he directly invests them with the power and discretion in relation thereto, which he intended that they should exercise.  Without losing sight of the principle that the entire will should be construed together, it is here we may reasonably expect to find the extent and limitations of that power and discretion stated and defined, and if the statement be such as of itself to leave no doubt of the testator's purpose and design, little force can be given to other mere general expressions by way of qualifying the intention thus distinctly announced.  The language here referred to is that the fund bequeathed shall be applied and devoted by the trustees "to the founding or endowing here, in the city of Chicago, upon a lasting basis, of such *charitable or other institution* as in their opinion (or in the opinion of a majority of them), is most needed, and will do the most positive and enduring good and the least harm."

It would be difficult, we think, to invest the trustees with a broader discretion in relation to the character of the institution to be founded and endowed than this language, standing alone, would appear to import. Nor does it seem to us that the language is in the least ambiguous, or that any doubt or uncertainty as to the purpose and intention of the testator is created by the insertion of the words " or other " between the words "charitable" and "institution." Undoubtedly those words, if given the force properly belonging to them, widen very largely the discretion of the trustees, as well as the range of objects from which the testator seeks to empower them to select the beneficiaries of his bounty. But certainty as to the intention of the testator, is a very different thing from certainty as to the beneficiaries which may ultimately be selected by the trustees, in the exercise of their discretion. The question is not what the trustees may do in the execution of their power, but what are the character, extent and limitations of the power itself. No discretion can be confided to a trustee or agent, without involving an element of uncertainty as to how the discretion will be exercised, but the intention of the principal or author of the trust in granting the discretion may be precisely defined, however broad the discretion itself may be. Here the intention of the testator, as evidenced by this language, seems to be to vest the trustees with a very wide discretion. The intention itself is precise, certain and well defined, although the discretion granted is sufficiently broad to involve all the elements of indefiniteness and uncertainty.

The language of the clause last above quoted, we think, taken together, gives evidence that the words "or other" were inserted by the testator in the connection in which we find them, designedly, and with a definite purpose. It may be observed that while the rules of law forbid the resort in construing a will, to any evidence of the testator's intention beyond that furnished by the language which he has employed, still it is competent to construe it in the light of the circumstances surrounding its execution. It appears, from the evidence, that in this case the will was written by the testator himself, without the employment or advice of an attorney or scrivener. It

further appears that he was not a man learned in the law, although he seems to have been a highly successful business man, as well as a gentleman of a high order of intelligence. The will, in many of its parts, is inartificially drawn, so far as relates to questions of technical legal phraseology, yet it bears upon its face evidence of profound thought, study and reflection in relation to the substantial purposes which he sought to subserve by the final disposition of his large estate. He was evidently sufficiently conversant with social science, and had sufficiently observed the workings of those institutions by means of which the charitable seek to alleviate and diminish poverty, suffering, vice, ignorance, degradation and crime among men, to know that public charities ordinarily are far from being unmixed benefits to their recipients. He had doubtless discovered, as have many others, that the indiscriminate bestowal of charities upon the poor and needy, has, by discouraging habits of industry and self-reliance, a tendency to create the pauperism it is professedly designed to alleviate. And the same may perhaps be found to be true in a greater or less degree of many, if not all the charitable institutions which in modern times have, on the whole, proved so great a blessing to mankind.

Recognizing, then, as he apparently did, that charitable as well as other public institutions, were likely to be productive of harm as well as good, he enjoined upon his trustees, as the only limitation upon their discretion in making choice of the institution to be founded and endowed, that it should be an institution which, in their opinion, was most needed, and would do the most positive and enduring good, *and the least harm.* Not wishing to trust his own judgment in making the selection, he sought to avail himself of the judgment of eight discreet and intelligent gentlemen, of extensive acquaintance and large business experience. Not wishing to determine for himself the question whether, after all, a charitable or a non-charitable institution was the most needed, and likely to do the most positive and enduring good, and the least harm, he chose to refer that question also to his trustees, and to charge them with its decision.

It would seem, then, that the words " or other " are of the

Taylor v. Keep et al.

very substance of the scheme which the testator saw fit to adopt for the purpose of carrying out and giving effect to his philanthropic design. We are unable to adopt the construction which involves a rejection of these words altogether, unless such construction is necessitated by clear and unmistakable evidences of the testator's intention, found in the other provisions of the will. In the construction of wills "every word is to have its effect, provided an effect can be given to it not inconsistent with the general intent of the whole will, taken together; for a testator is not to be supposed to have used words without meaning, if it is possible to give them a consistent meaning; and the rule is not to reject any words unless there cannot be any rational construction of those words as they stand." Ward on Legacies, 194.

It is insisted, however, that various expressions in the will indicating a general charitable disposition or intention on the part of the testator, should be held to so far control the language of the ninth section as to divest the trustees of the discretion there given them to apply the bequest to other than a charitable purpose, and to practically expunge the words "or other" from the will. It should be observed that in no case are the expressions here referred to used by way of granting, modifying, limiting, explaining, or seeking to control, the power or discretion vested in the trustees. Part of them are indicative of a general charitable purpose, and nothing more. Others refer to the institution to be founded by the trustees as a charity or charitable institution. Can such expressions or mere references control the language by which the gift itself is made, and the manner in which the trust is to be administered prescribed, so long as that language is clear, sensible and unambiguous? We think not.

The first reference to a charity or charitable institution is in the fourth section, where it is provided that, in a certain event, the fund in that section mentioned, which was a fund totally distinct from that bequeathed by the ninth section, should fall to such charitable institution as might be founded in pursuance of the subsequent provisions of the will. Here is no attempt to enjoin upon the trustees the founding of a charitable institution,

nor a clear expression of an expectation that the institution to be founded would be charitable and not otherwise. The next reference is in the sixth section, where it is provided that a certain other fund should, in a given contingency, go to the charitable institution afterwards mentioned, or such other charitable institution as said executors should designate. Here it is by no means clear that any reference whatever is made to the institution to be founded by the trustees. The Home for the Friendless, which the record clearly shows to be a charitable institution, is mentioned by name in the ninth section, and the language of the sixth section may well be construed to mean that in the contingency supposed, the fund there spoken of should go to the Home for the Friendless, or any other charitable institution which the executors might designate, which might or might not be the institution to be founded by the trustees. The most pertinent and forcible references to a charity or charitable purpose, are those found in the latter part of the ninth section itself, in which provision is made for filling vacancies in case of death of any of the trustees "before such proposed charity is effected," and where it is provided that if a majority of the trustees shall deem it inexpedient "to organize a new charity, they may certify the same," etc. This language undoubtedly alludes directly to the institution which the trustees were expected to found, but it does not, in terms, assume to determine the character of that institution, and is, at most, an inaccurate and inadequate reference to it.

One of the recognized rules to be observed in the construction of wills is: "That an express and positive devise cannot be controlled by the reason assigned, or by subsequent ambiguous words, or by inference and argument from other parts of the will; and accordingly such devise is not affected by a subsequent inaccurate recital of or reference to its contents, though recourse may be had to such reference in case of ambiguity or doubt." 1 Redfield on Wills, 426, note. "A clearly expressed intention in one portion of the will is not to yield to a doubtful construction of any other portion of the instrument." Bell's Adm'r v. Humphrey, 8 W. Va. 1.

While these various references to a charity or charitable

Taylor v. Keep et al.

institution, as we have already said, indicate a general charitable intention on the part of the testator, and may fairly be held to imply an anticipation on his part that the trustees, in the exercise of their discretion, would most probably found some institution which the law would deem charitable, they do not contain the expression of an affirmative wish, direction or desire, that such should be the result, and cannot, therefore, have the effect of even precatory words.

After duly considering, then, and giving proper weight to the language of the entire will, we are brought to the conclusion that the testator, by the ninth section, gave expression to a clear and manifest intention to vest his trustees with a discretion to devote the residuary fund to founding and endowing in the city of Chicago, an institution which might be either charitable or non-charitable, they being bound in determining what it should be only by a consideration of what was most needed, and what would do the most positive and enduring good, and the least harm. Any attempt to narrow or abridge the discretion thus clearly and with manifest purpose given to the trustees, would only be substituting the will of the court for the will of the testator. The bequest must stand or fall, as the testator has seen fit to make it. Sedulously as the law strives to uphold, wherever it can, testamentary dispositions of property, and especially bequests to charitable uses, such result cannot be attained contrary to the clearly expressed intention of the testator. In such case his intention must prevail, even though a failure of the bequest may be the consequence. The rules of construction cannot be strained to bring a devise within the rules of law.

Nor does it seem to us that any case is here presented for an application of the doctrine of *cy pres*. It is not a case of a bequest to charity, and a failure of the particular mode in which that charity is to be effected. The bequest itself is not made definitely and exclusively to charity, but is so made that the trustees may, if they choose, devote the whole of it to a purpose which the law pronounces non-charitable. The doctrine of *cy pres* is to be resorted to, not for the purpose of modifying and restraining the intention itself of the testator, so as to bring it within the bounds of a legal charity, but where the

fund is once definitely devoted to charity, and no mode for its application is prescribed, or the mode selected by the testator fails, then the courts, under the *cy pres* power in order that the charity itself may not fail, will substitute another mode of devoting the property to charitable purposes, as near as may be in accordance with the expressed intention of the testator.

It follows, then, that the residuary bequest, at least so far as the trustees are concerned, is void for uncertainty. It is true, they *may* devote the fund to charity, but they are not *bound* so to apply it. It is consequently a trust which a court of chancery cannot supervise or carry into execution. Morice v. Bishop of Durham, 9 Vesey Jr. 399.

The next question to be considered is, whether on failure of the trust in the trustees, the fund should go to The Home for the Friendless or to the heir-at-law?

The Home for the Friendless, as has been remarked, appears from the evidence to be a charitable institution in the strict legal sense. The fund then must go to that charity, unless by the terms of the will its rights are involved in the same indefiniteness and uncertainty, and subject to the same discretion on the part of the trustees which exists in case of the institution the trustees are directed to found and endow. The language is, "and provided further, that if the majority of said trustees *shall be unwilling, or deem it inexpedient to organize a new charity*, they may duly certify the same to my administrators and executors, who shall then pay over the same to the lawful managers or trustees of 'The Home for the Friendless' in the said city of Chicago."

It will be observed that this language does not provide for giving the fund to The Home for the Friendless in case of a mere failure or lapse of the trust reposed in the trustees. The condition upon which the right of this institution is to arise is of an entirely different character. That condition, manifestly, is the exercise of a discretion or choice by the trustees. The scope of that discretion is to found and endow a charitable institution or a non-charitable institution, or to suffer the fund to go to this particular charity. Whether it shall take the latter direction is left wholly discretionary with them. The Home

Taylor v. Keep et al.

for the Friendless does not occupy the position of a residuary legatee, appointed to take in case of failure for any cause to found another institution, but is only named by way of addition to the range of charitable institutions, from which the trustees were empowered to select. As to all other objects, whether charitable or otherwise, they were restricted to the founding and endowing of a new institution. Existing institutions generally were outside the range of the testator's bounty. He chose, however, to make an exception in favor of The Home for the Friendless, and as the giving of the money to that institution would not involve the necessity of retaining the fund in the hands of the trustees for administration, as in case of founding a new institution, special provision was made in case this particular charity became the object of their choice for transferring the fund directly to the trustees already in charge of and administering its affairs. We think, then, that precisely the same indefiniteness and uncertainty pervading the trust in the hands of the trustees, extends to and vitiates those provisions of the will relating to The Home for the Friendless. By the terms of the will the trustees *might* devote the fund to this particular charity, but they were not *bound* so to apply it, nor can the courts coerce them so to do.

The only remaining question in the case relates to the disposition to be made of the fifty thousand dollars mentioned in the sixth section of the will, in case of the death of Hobart Chatfield Taylor without issue. The provision is that, in that event, this fund shall go " to the charitable institution hereinafter mentioned, or such other charitable institution as my executors shall designate." Here the will manifestly devotes this fund to charity and nothing else. A charitable institution, "The Home for the Friendless," is named in the will. The executors, in the event named, may give the fund to that charity, or select another. "If the bequest be for charity, it matters not how uncertain the persons or the objects may be, or whether the persons who are to take are *in esse* or not, or whether the legatee be a corporation, capable by law of taking or not, or whether the bequest can be carried into exact execution or not; for in all these and the like cases, the court will sustain the

legacy and give it effect according to its own principles, and where a literal execution becomes inexpedient or impracticable, the court will execute it as nearly as it can, according to the original purpose, or *cy pres*." Heuser et al. v. Harris' Ex'r et al. 42 Ill. 425.

We are of opinion, then, that the disposition of the fifty thousand dollars provided for in the sixth section, in case of the death of the legatee therein named without issue, is a valid bequest to charity, and should be sustained as such.

The decree of the court below will be reversed and the cause will be remanded, with instructions to enter a decree dismissing the cross-bill of the executors, and also the cross-bill of The Home for the Friendless, and to enter a decree under the original bill of complaint in accordance with the views expressed in this opinion.

Decree reversed.