### IN THE MATTER OF THE ESTATE OF ADOLPH SUTRO, DECEASED.

[No. 51 (new series); decided October 30, 1905.]

**Jurisdiction of Probate Court—How Far Extends.**—Prior to the amendment of 1895 to section 738 of the Code of Civil Procedure, jurisdiction to determine the rights of heirs, devisees and legatees, and the validity of testamentary trusts, appears to have been vested exclusively in the superior court sitting in probate.

**Trust—Determining Validity Prior to Probate of Will.**—Under section 738 of the Code of Civil Procedure, as amended in 1895, the validity of a testamentary trust in real estate may be determined in advance of the probate of the will, in a suit to quiet title or to determine an adverse claim.

**Appeal—Affirmance Without Opinion.**—The affirmance of a judgment by an appellate court, although without an opinion, is a determination that the objections argued against it are unavailing.

**Probate Jurisdiction—Regulation by Legislature.**—The probate jurisdiction of the superior court is essentially under the control of the legislature, which may enlarge or restrict it.

**Charitable Trusts—Parties in Suit to Quiet Title.**—In a suit to quiet title, which involves the validity of a charitable trust created by will,

the court held that, in the circumstances of the case, the primary trustees sufficiently represented the beneficiaries, and that neither the attorney general nor the ultimate trustees in being were necessary parties defendant.

**Charitable Trusts—Invalid Accumulations.**—Section 723 of the Civil Code, which provides that "all directions for the accumulation of the income of property, except such as are allowed by this title, are void," applies to accumulations for charities.

**Charitable Trusts—General Charitable Intent.**—The testamentary trust involved in this case is found by the court not to evince a "general charitable intent" which will be given effect so far as is consistent with the rules of law, if the mode prescribed is unlawful.

**Charitable Trusts—Purposes "Charitable or Other."**—A testamentary trust which contemplates purposes "charitable or other" cannot be sustained as a charitable trust.

**Charitable Trusts—Noncharitable Purposes.**—If some of the purposes of a testamentary trust are charitable, while some are not, no part of it is sustainable as a charitable trust, if the bequest violates the law regulating the validity of private trusts.

Bishop & Wheeler, Charles S. Wheeler, J. F. Bowie, and Garret W. McEnerney, for Applicants.

Bradley & McKinstry, J. C. McKinstry, Morrison & Cope, R. D. Silliman, for Opponents.

COFFEY, J. Adolph Sutro died in the city and county of San Francisco, state of California, on the eighth day of August, 1898, leaving a will dated May 22, 1882. The will contained a large number of specific bequests and devises, while a large tract of land, comprising a portion of the San Miguel Rancho and part of the Cliff House Ranch, in the city and county of San Francisco, was reserved and made the subject matter of an attempted trust. The provisions by which it was attempted to create this trust are as follows:

"XXV I will and direct that the title in fee of said parcels of land marked I and II last hereinbefore described and each thereof shall go in trust, into the hands of my executors, to be by them preserved and managed for and during the period of ten (10) years after my death, and then by my executors to be conveyed in trust, to the board of trustees hereinafter provided for, but not to be sold or disposed of by anyone having the charge or management thereof dur-

ing the life of the last survivor of my children mentioned in this will, and at the death of said last survivor, or as soon thereafter as may be deemed, by the board of trustees hereinafter mentioned for the best interest of the Trust hereinafter created and appointed, I will and direct that the bulk or the whole of said parcels of real estate marked as aforesaid I and II shall be sold by said board of trustees, as speedily as possible, but in the manner they shall deem best, for realizing the largest amount, and the funds realized from such sales, shall be managed and applied by said Board of trustees for such charities, institutions of learning and science and for premiums to be set apart for distinguished scholarships and scientific discovery and inventions as shall be directed by my said executors; such directions by my executors shall be filed and recorded in the County Recorders office at the City and County of San Francisco, State of California, within three (3) years after my death, and the directions so given, filed and recorded within the time so prescribed, shall be obligatory and binding upon said Board of Trustees, and in default of said executors giving such directions within the time and in manner aforesaid, I direct that said Board of Trustees at once organize and elect proper officers for such organization, and within twelve months there-after designate, select and appoint by resolutions entered on their minutes such application of the funds realized from such sales, but strictly within the purposes and objects herein by me mentioned, as they may deem best, for record with said County Recorder, a copy of such resolutions, and my executors shall upon a default on their part as aforesaid have no further right to give such directions to said Board.

"XXVI   The said Board of Trustees shall consist of the Governor of the State of California; the chief Justice of the Supreme Court of the State of Californa; the presiding Judge of the Superior Court of the City and County of San Francisco; the United States Circuit Judge for the district of California; the Mayor of the City of San Francisco; the President of the Chamber of Commerce of San Francisco; the President of the board of Regents of the University of California and their successors in office; and six other members

to be chosen by the above named officers, three from amongst the leading Bankers of San Francisco, and the other three from amongst my male descendants, or those of my brothers, bearing the name of Sutro; and in case of the abolishment of any of the offices named, or the reorganization of the government or Courts of the State of California; or of the City and County government of San Francisco, effecting a change in the name or office of any of the officers mentioned, the remaining trustees shall immediately proceed to select officers filling positions corresponding thereto as near, as in their judgment may be.

"XXVII At the end of the ten years herein mentioned for the execution of the trust and duties of my executors as aforesaid, and prior to the conveyance herein provided to be made of said property to said board of Trustees, my executors shall obtain in writing from the officers herein named to constitute part of said board, their acceptance of said Trust, and also the acceptance in like form of the six members thereof to be elected as aforesaid and in case of any of such officers or such members elect shall decline, or for thirty days thereafter neglect so to signify their acceptances such vacancy or vacancies shall be filled by the members who have accepted out of other incumbents of Federal, State or County or city officers and other persons as the case may be.

"The acceptances and declinations herein mentioned shall be filed in the permanent archives of the Board.

"XXVIII Two thirds of said Board of trustees, at any meeting thereof shall have full power to execute all duties of their trust and a majority of my executors shall have full power to act in the discharge of their duties.

"XXIX In order that my executors, or in their default, the trustees, shall in respect to the directions they are authorized to give, be able to act more intelligently in carrying out my instructions, they shall offer in three of the leading newspapers of San Francisco, of New York and of London, England, by an advertisement in each of said papers, and pay the sum of fifteen hundred dollars for the best practical treatise upon the application and management of the funds to be realized from such sales, in conformity with the gen-

eral outlines herein expressed; one thousand dollars for the second in merit of said treatises and five hundred dollars for the third in merit of said treatises.—But my executors are not authorized, but are expressly prohibited, to direct the application of any of the funds realized from the sale of said lands to any institution or charity or purpose, which is in any degree sectarian or in the management of which any priest, clergyman, minister or rabbi, or other religious officer shall have any voice or control, and said Board of Trustees are in like manner prohibited from making any such application.

"XXX  My executors, during the time that they shall have the charge and management of the parcels of real estate herein referred to and numbered I and II, may lease the same for said term, collect rents, pay taxes, assessments and the necessary expenses connected therewith, and in case there shall remain a surplus, may employ such surplus in the improvement of said property in such manner as to increase its value and income.—And said board of trustees shall, after they take the management and charge of said property in like manner lease and collect the rents thereof, and out of the same pay taxes, assessments and necessary expenses and employ any surplus in the improvement of the property by erecting buildings or otherwise. But in case the rents and income from all the property shall not be sufficient to defray such charges and expenses, or other things required to preserve the ownership, they may, as a last resort, dispose of enough of said real estate to pay the same.

"XXXI  In respect to that part of the Cliff House ranch, herein mentioned, I direct that it shall be sold only as a whole, and that before it can be disposed of to any other purchaser or purchasers, it shall be first offered for sale to the city and County of San Francisco at a price which shall be twenty (20) per cent less than the highest bona fide bid therefor by any other party, such bona fide bid to be ascertained, by inviting bids therefore by public advertisement for six months; but such sale to the City and County of San Francisco shall be made on the express condition, that it shall be kept perpetually as a place of public resort, and should said

city and county elect to purchase said property, on said terms and conditions, said board of trustees and their successors are authorized and directed to make such sale.

"XXXII I hereby expressly declare it is my intention that the parcels of land herein referred to as part of the San Miguel Rancho and part of the Cliff House Ranch and numbered I and II, shall on the death of the last survivor of my said children vest in said board of trustees and their successors, in trust, that the same may be sold and the proceeds therefrom be applied to the uses and purposes, charitable, educational and other, which are, in this my will, provided and specified."

In October, 1898, and before the instrument dated May 22, 1882, had been admitted to probate, as the last will of Adolph Sutro, deceased, an action was begun in the superior court of the city and county of San Francisco, by Clara A. Sutro, Edgar E. Sutro, Kate Nusbaum, and Rosa V. Morbio, plaintiffs, against Emma L. Merritt and W. R. H. Adamson (the persons named as executrix and executor respectively under the will), as trustees under the instrument purporting to be a will of Adolph Sutro, deceased, dated May 22, 1882, and Emma L. Merritt, George W. Merritt, her husband, and Charles W. Sutro, defendants.

The action was in form a suit to quiet title. The complaint alleged that the plaintiffs were the owners of an undivided two-thirds of certain real property described in the complaint; that the defendants Merritt and Adamson claimed to be trustees under an instrument purporting to be the will of Adolph Sutro, deceased, dated May 22, 1882, and that as such trustees they claimed an interest in the property adverse to the plaintiffs, which claims were without right or foundation; that Charles W. Sutro and Emma L. Merritt claimed an interest adverse to the plaintiffs, which claims were also without right or foundation, and that none of the defendants had any interest in said property, either as trustees or otherwise. The plaintiffs prayed that the adverse claims of the defendants be determined, that all questions concerning the validity of any gift under the purported will of Adolph Sutro be finally adjudicated, and that it be ad-

judged that the defendants did not have as trustees or otherwise, any right, title or interest to said property, and that they be enjoined from asserting any such right, title or interest.

Charles W. Sutro suffered a default to be entered against him. The defendants Merritt and Adamson as trustees, and Emma L. Merritt and George W. Merritt, her husband, individually, filed a joint answer to the complaint, in which they denied the right of the plaintiffs to the property described, admitted that the defendants Merritt and Adamson asserted to be trustees under the purported will of Adolph Sutro, and that they claimed an interest in the property as such trustees, but alleged that their claims were not without right or foundation, and that they had an interest as such trustees in the property described.

In an affirmative defense and counterclaim the defendants averred the ownership of the property by Adolph Sutro, his death, the due execution of the will in question, and set out in full those portions of the will which provided for the charitable trust, alleging:

"Seventh: That in and by the terms and provisions of said will, and more particularly the paragraphs thereof referred to and set forth in this answer, all the lands and premises described in said complaint and in this answer were conveyed, transferred and devised to the defendants, Emma L. Merritt and W. H. R. Adamson, as trustees, to be by them preserved and managed for and during the period of ten (10) years after the death of said testator, Adolph Sutro, and then by said defendants and trustees to be conveyed in trust to a board of trustees, as provided in said will, for charitable purposes, and said Emma L. Merritt and W. H. R. Adamson, as said trustees, are the owners of said property, and entitled to the possession of the same, subject only to the execution of the trust, and neither all nor any of said plaintiffs have any estate or interest in said property, nor are they the beneficiaries, nor is any of them the beneficiary, of said trust."

The defendants then prayed that their rights as trustees under the will be adjudicated.

Upon a stipulation by the parties that judgment should be rendered for the plaintiffs, unless a lawful and valid trust was created by the will, the court rendered judgment for the plaintiffs, expressly finding that the plaintiffs were the owners of the property described; that the trusts attempted to be created by the will of Adolph Sutro were void, and that the defendants, as trustees, had no interest therein.

On January 19, 1899, the will of Adolph Sutro, deceased, was admitted to probate.

On May 22, 1903, a petition for partial distribution was filed by Kate Nusbaum, and others, asking distribution to them, as heirs at law, of the property included in the alleged trust, claiming that as to this property Adolph Sutro had died intestate. In granting the application for partial distribution the following opinion was rendered:

The first question to be considered here is as to the validity and effect of the judgment in Sutro v. Merritt, No. 65,811, department 10, superior court.

It is claimed by petitioners that the judgment in that case governs the present application, forasmuch as it determined that the trusts attempted to be created by the will of Adolph Sutro were void.

Opponents argue that the judgment is void, and does not bind this court in this proceeding, for the equity department had no jurisdiction of the subject matter, as the superior court, in probate, was and is vested with exclusive power to determine the rights of heirs, devisees and legatees, and the legislature did not and could not confer this jurisdiction upon the court in equity. It is also claimed that there was a defect of parties necessary to a complete adjudication of the essential issue. The action was in form a suit to quiet title, but in reality its purpose was to determine in advance of probate the validity of certain provisions in an instrument purporting to be the will of decedent; and the judgment of the court was, after due hearing and consideration, that the provisions in question were void because the trust attempted to be created therein was not intended wholly for charitable purposes, but was intended for purposes partly charitable and partly other than charitable; and that the purposes for

which it was intended are vague and uncertain, and cannot be made certain; and that it cannot be determined what proportion of his estate the said testator intended for charitable purposes and what proportion he intended for purposes other than charitable; and that the attempted trust was intended for purposes not authorized by law and that the testator intended to create a perpetuity in a portion of his estate, contrary to the constitution and laws of California, for purposes other than charitable. The parties to that action were substantially those who are petitioners and respondents herein.

The defendants, Merritt and Adamson, as trustees, and Emma L. Merritt and George W. Merritt, her husband, individually appeared and answered, putting in issue the main question of the validity of the testamentary trust clauses, and prayed that the rights of the trustees be adjudicated. Their attorneys of record appear to have been E. W. McKinstry, and R. H. Lloyd, the former of whom is now deceased, and the latter is not now connected with the trustees. The attorneys for the plaintiffs in that case are the same representing the petitioners in this proceeding. No appeal was taken from that judgment; and, if the court in equity was competent to pronounce it, nothing remains for this tribunal but to acquiesce in its conclusion. The only question, therefore, presently to be examined, is the competency of the court sitting in equity to deliver that judgment. Its power in the premises seems to me to be dependent upon the amendment of 1895, for, prior to the passage of that amendatory act, it had been held that, under our present judicial system, the subject matter was within the exclusive province of the court sitting in probate. This is the tenor of the main decisions relied upon by the trustees, although it is contended by petitioners that in none of the cases cited was the question directly involved, and that the language of the opinions was mere dicta. The late Justice Temple expressed himself very strongly in favor of exclusive jurisdiction, although he made but one allusion to the amendment and that in the Estate of Freud, 134 Cal. 333, 66 Pac. 476, where he said it did not

apply. He does not appear elsewhere to have made any reference to the act.

It is claimed, however, that all doubt is set at rest as to the application of this amendment to such controversies as Sutro v. Merritt by a decision of the supreme court which must here be held conclusive as affirming the proposition that the act of 1895 authorizes such a suit: Fair v. Angus, 132 Cal. 581, 64 Pac. 1111. If this be so, this court need not burden itself with the task of further examination of authorities, for that one should seem sufficient; but, it is maintained by respondents that the case cited is not authority, as the question here under discussion was not even remotely suggested, much less argued or considered, therein; and, when that decision was rendered, the trust had been declared invalid in Estate of Fair, 132 Cal. 523, 84 Am. St. Rep. 70, 64 Pac. 1000. Whether or not the amendment of 1895 was enacted for the purpose of enabling the Fair heirs to obtain the construction of the will before probate, it is certain that advantage was taken of that act to institute an action prior to probate to determine an adverse claim made by them to certain real estate; and that in that action it was contended that by virtue of the amendment to section 738, Code of Civil Procedure, the court was authorized to determine the validity of the trust, irrespective of the probate of the will, or of any proceeding that might be taken in the administration of the estate. This contention was sustained by the superior court and an appeal was taken, and the opinions are to be found in 60 Pac. 442. Justice Harrison, who wrote the main prevailing opinion on that appeal, stated, after alluding to the points presented, that it was unnecessary to determine the question because of the decision in the Estate of Fair rendered simultaneously.

At the same time Justice McFarland, in the course of a dissenting opinion upon the other question, incidentally said that there was a preliminary point as to the right of plaintiff, as heir, to maintain the action, which point was pressed by some of the counsel for appellants and waived by others; but this right, he declared, was plainly given by section 738 of

the Code of Civil Procedure, as amended in 1895. Upon the rehearing of the case, the judgment of the superior court was affirmed, and Justice Garoutte said that in view of the decision of affirmance just then delivered in the Estate of Fair, wherein they had held the will invalid, there was no practical reason why the appeals in the other case should be considered in extenso upon the various matters presented by counsel in their briefs, for the first decision being to the effect that neither the trustees nor the beneficiaries taking any estate by the will, the judgments rendered in these causes and the orders denying the motions for a new trial should be affirmed, and it was so ordered.

It is here claimed by petitioners that in view of the fact, which, it is said, appears plainly from the opinions on the former hearing, that the right of the plaintiff to maintain such an action was argued, the affirmance of the judgment necessarily involved a decision that the action was properly brought, and that the view of Justice McFarland, in his dissenting opinion on the original appellate hearing, that this right of action was plainly given by the amendment of 1895, was correct, and that, therefore, this court is bound by it as authority directly in point, the mere circumstance that no opinion was written not lessening its weight. As to the effect of an affirmance without an opinion, attention is directed to the remarks of Mr. Justice McKenna, speaking for the court, in Fidelity and Deposit Co. v. United States, 187 U. S. on page 319, 32 Sup. Ct. 120, 47 L. Ed. 197, wherein the principle is announced that where a decision of the court of last resort affirming a decision of an inferior court sustaining the validity of a rule is rendered without an opinion, it is not a proper inference that the supreme court considered the rule of doubtful validity, but rather that it regarded the grounds of challenge as without foundation. If this be the rule of decision, it would seem to dispose of the contention of respondents that Fair v. Angus, 132 Cal. 581, 64 Pac. 1111, is not an authority, and to enforce the conclusion that the superior court in Sutro v. Merritt had jurisdiction of the subject-matter; and to render unnecessary any further discussion as to the power of the legislature to enact the amendment. As to this last

point, however, that the legislature was not authorized by the present constitution to permit heirs and devisees to litigate their respective titles to the lands of a decedent under whom they severally claim, and that it cannot curtail the exclusive jurisdiction of the superior court, as constitutionally conferred, "of all matters of probate," including the interpretation of a will so as to affect or determine the rights of distributees among themselves, reference may be made to the opinion of Justice Garoutte in Estate of Davis, 136 Cal., on page 597, 69 Pac. 412, in which he says that the probate jurisdiction of the superior court is essentially under the control of the legislature, which may enlarge it or may restrict it; and that the character and extent of the jurisdiction are not only under legislative control alone, but the procedure by which that jurisdiction may be invoked and rights thereunder adjudicated is expressly laid down by statute; and that procedure must be followed or relief cannot be secured. Justice Harrison and Van Dyke concurred in these views, and the former subsequently wrote the opinion in Martinovich v. Marsicano, 137 Cal. 354, 70 Pac. 459, in which Justice Garoutte and all the other justices joined, wherein the phrase "matters of probate" was defined, the court remarking that by the constitution of this state the superior court is vested with jurisdiction "of all matters of probate," but its exercise of that jurisdiction is regulated by statute. If we are to compare this language with that quoted from Justice Garoutte in the Estate of Davis, the meaning of both would seem to be that the legislature has the power to add to or take from, "to enlarge or restrict," "to regulate," in this sense, the jurisdiction. As has been pointed out, in argument, and in the judicial remarks quoted, the nature of the proceedings in which this jurisdiction shall be exercised, is entirely a matter of legislative regulation. Several instances have been cited in which the legislature has added to powers in probate matters formerly cognizable only in equity. No question has been raised as to the validity of these legislative acts. After a careful consideration of the arguments of counsel, this court is of opinion that the amendment of 1895 to section 738, Code of Civil Procedure, was designed to determine the validity of

devises contained in a will in advance of its probate and that the superior court in equity had jurisdiction of the subject matter in Sutro v. Merritt; but it is said that the judgment in that action is not controlling because of the lack of necessary parties. This point is discussed at length in the briefs of counsel, but it would be impracticable to do more in this place than to state conclusions. This court is of opinion that, in the circumstances of this case, the primary trustees sufficiently represented the beneficiaries, and that neither the attorney general nor the ultimate trustees in being, and who were named in the will, were necessary parties. The language of the will in paragraph 25 would seem to convey, in so many words, the title in fee to these trustees, and its effect is not impaired by the words of paragraph 32, besides the devise, if it shall be so considered, is not to the ultimate trustees as individuals, but as a board. The testator declared his intention that the property shall vest in ''said board of trustees.'' Until the organization of the board, there would be no one in being in whom the property could vest. This seems to the court to be the meaning of the will, and, therefore, the individuals alluded to were not essential parties to the controversy in equity. This appears to have been the theory of all parties and their counsel at the time of the litigation in Sutro v. Merritt. This court does not feel justified in declaring void the judgment in that action on any of the grounds assigned, and it does not deem necessary further discussion, as it is important that the decision should be delivered without undue delay.

If the foregoing views be correct, the matter has been adjudicated, and there should be no occasion for this court to inquire into the validity of the trust clauses in the will; but the other questions have been discussed with such learning and thoroughness that it would not be courteous to counsel to dismiss them without adverting to the points presented. The arguments comprise several hundred pages, and exhibit great research and ability, and the court has given to them serious study, but it is not desirable to write an opinion covering all the ground traversed by counsel.

The will undertakes to create a trust for charitable uses by setting apart a large tract of land not to be sold or disposed of until such time after the death of the last survivor of testator's six children, as may be deemed by a board of trustees, not now in existence, to be for the best interests of the trust; the income to be accumulated and the land held until the termination of the trust, at which time the property shall be sold and the proceeds applied to "the uses and purposes, charitable, educational, and other," provided and specified in the will, "such charities, institutions of learning and science, and for premiums to be set apart for distinguished scholarships, scientific discoveries, and inventions" as shall be directed by his executors, within three years after his death. This devise is defended on the ground that the proceeds of the sale of property are to be applied to charitable purposes, and therefore it may be sustained. The position of the petitioners, primarily, is that the devise is contrary to public policy as declared by the constitution, which provides against the holding of large tracts of land, uncultivated and unimproved, by individuals or corporations as against the public interest and to be discouraged by all means not inconsistent with the rights of private property.

So far as private property is concerned, the rule against perpetuities prevails. The principle stated in the constitution is substantially the English rule against restraints upon alienation of lands, even for charitable purposes. The rule and its history need not be rehearsed here. The reason of the rule was of universal application. It is contended, however, that in this state the only limitation upon a testator's right to give to charitable purposes is that contained in the Civil Code, which permits a devise of not more than one-third of his estate, and that it is settled in California that perpetuities may be created for charity and the lands rendered inalienable, and that, in any event, the court could and would direct a sale of the property before the death of the surviving child, if the public interest required it; and that the bequest, being intended for charity, should not be declared void, if it can possibly be made good.

As to that part of the will which provides for accumulation, it is claimed by the trustees that if the provision violate the statutory rule, the only result is that the income should be devoted at once to charitable uses, and that an unconditional gift to charity is not affected by a direction for accumulation which is too remote, for the income becomes immediately distributable in charity and the only effect of an unlawful direction is that the fund becomes available for the charity, the donee for charitable uses thus becoming the legatee of the income. It would seem, however, that in the case at bar this provision cannot be maintained, as it is repugnant to the statute which declares that all directions for the accumulation of the income of property, except such as are allowed by title two of the Civil Code, are void, and this clause does not appear to be an exception. So far as the research of this court has extended, this provision is not supported by statute or authority.

It is said that, in any event, there is nothing in the code forbidding accumulations for charitable purposes, and that the sections quoted are inapplicable to charities, and that the court may grant relief, if the period of accumulations is unduly extended by the terms of the trust, but otherwise should not interfere, when the will exhibits a general charitable intent which will be effected as far as is consistent with the rules of law, if the mode prescribed be unlawful, and here the dominant purpose of the testator being charitable, it should be upheld. Even though a general charitable intent is evident in the will, the court is bound by the terms of the instrument. The supreme court has said that it is not what the testator meant, but what his words mean, for his intention is to be ascertained by his expression and not by conjectures as to what may have existed in his mind. We must take the will as we find it and construe all its words according to their common import. The testator may have had a general charitable design, but it is not shown by the language chosen to execute his purpose, certainly not by paragraph 29, which excludes from the scope of its operation enumerated classes whose work is mainly that of beneficence and charity. Plainly, he did not favor any charity conducted by any such classes or

persons, when he closed his bounty to those under whose auspices practically all the charities in the country are managed. If we are to interpret his intention, according to the rules of law, giving effect to every word, it is difficult to deduce a general charitable intent by which the attempted trust can be sustained. The general intention must be carried out by apt and appropriate words, and the court is restricted in its construction to what is found in the will.

Numerous attempts have been made to define a charity, in the legal sense, without satisfactory result. Quite a collection of definitions is to be found in the brief by trustees, in one of which, by Mr. Binney, charity is defined to be whatever is given for the love of God or the love of one's neighbor, in the catholic and universal sense, given from these motives and to these ends, free from the stain or taint of every consideration that is personal, private, or selfish. The trustees claim that, measured even by this severe test, the bequest here should stand. It is submitted, however, that subjected to the severity of this test the bequest must fail, for the testator denied his benefaction, "expressly prohibited," to any institution or charity or purpose which is in any degree sectarian or in the management of which any priest, clergyman, minister, or rabbi, or other religious officer shall have any voice or control, and said board of trustees are in like manner prohibited from making any such application. It has been said by an English judge that it is probably impossible to define what is a charitable bequest, and it may not be advisable to attempt to do so; but, in one sense, at least, charity is not illustrated in the proscriptive sentiment of the clause quoted nor does it seem, as trustees claim, to correspond to the calls of Binney's definition, nor does it answer the primitive signification of the term, which is, according to Webster, "love; universal benevolence; goodwill." It is described by the apostle, as the greatest of virtues, and the speech of Lincoln at Gettysburg proclaimed "malice toward none and charity for all." But here we have a bequest the spirit of which is repugnant to the principles of charity as commonly understood. How can it be said to express a general charitable intent, when it precludes the possibility of its application to any institution, charity, or

purpose in which any minister or professor of religion has any concern? It is not a question of any particular denomination; it is a question of almost universal exclusion of those by whom substantially all charities are administered. None of these can be aided without directly violating the intention of the testator. There is no intention here to impugn the motive of the testator; his philanthropic purpose cannot be assailed; his aim to create a trust which might benefit his fellowman may be admitted, but he is not the first testator to have missed his mark through mistake in the choice of the means by which success might be secured.

What was his purpose in creating this trust? Its character must be determined by its terms. No matter how good his motive, it should be distinctly and definitely described; but in this case the description of the beneficiaries includes indefinite classes which may or may not be charitable, and an authority relied upon by respondents decides that where a bequest is made for charitable purposes and also for purposes of an indefinite character, which are not charitable, the whole bequest will be void.

If, for instance, a bequest is made for such charitable, or other purposes, as the trustee should think fit, the whole bequest will be void: Estate of Hinckley, 58 Cal. 509.

It is plain that there are objects in the will noncharitable as well as charitable, and the court is not at liberty to discriminate. It cannot imagine an intent that the testator has not expressed. The testator refers to his purposes as ''charitable and other.'' In one paragraph he describes disjunctively his devisees as ''any institution or charity or purpose.''

It would seem, according to the authorities, that the words ''or other'' are of the very substance of the scheme which the testator saw fit to adopt for the purpose of carrying out and giving effect to his philanthropic design. The court is unable to adopt a construction which involves a rejection of these words altogether unless such construction is necessitated by clear and unmistakable evidences of the testator's intention, found in the other provisions of the will. In the construction of wills, every word is to have its effect, provided an effect can be given to it not inconsistent with the general intent of

the whole will, taken together; for a testator is not to be supposed to have used words without meaning, if it is possible to give them a consistent meaning and the rule is not to reject any words unless there cannot be any rational construction of those words as they stand: Taylor v. Keep, 2 Ill. App. 368.

The bequest itself is not made definitely and exclusively to charity, but it may be devoted to purposes noncharitable.

Respondents insist that the "other" purposes are also charitable, and that testator meant by his inclusion of the word "charities" to call attention to those "charities" which he particularly favored, or he used the word in the more restricted and common sense of relief or alms to the poor; but this subtle distinction cannot be accepted by the court in the face of the express terms of the will. The bequest must stand or fall, as the testator has seen fit to make it.

No matter how meritorious may have been his motive, the testator has failed to express his purpose so that it might be capable of legal enforcement. The reasoning of respondents, plausible and ingenious as it is, has not convinced the court that the scheme of the will is either practicable or legal, and while the court has desired to treat the various heads of the subject in a manner that might convince counsel that their work has been studied and appreciated, it is not expedient to extend this opinion to greater length.

Application granted.

_____

An Appeal in the matter of the Estate of Sutro was dismissed in 152 Cal. 249, 92 Pac. 486, 1027.