In the Matter of Proving the Will of ELIZABETH B. FRASCH, Deceased.

MILDRED L. MARTIN et al., Appellants; UNITED STATES TRUST COMPANY, as Executor and Trustee, et al., Respondents.

**Will — trust — charitable uses — clause in will directing payment of income from trust fund to incorporated institutions which shall agree to use it for research in agricultural chemistry valid — provision one for charitable use within meaning of section 12 of Personal Property Law — not invalid because "incorporated institutions" may include business corporations, where it is clear income must be applied to public use.**

1. A clause in a will creating a trust for the purpose of establishing a fund for chemical research and directing the trustee to pay over the net income to " one or more incorporated institutions in the United States, which shall be selected by the said trustee after advising with the American Chemical Society, upon the condition that the said institutions shall agree that the money so received shall be devoted to research in the field of agricultural chemistry, with the object of obtaining results which shall be of practical benefit to

the agricultural development of the United States," is valid. It makes provision for a charitable use within the meaning of section 12 of the Personal Property Law (Cons. Laws, ch. 41).

2. A contention that the clause is invalid because the term " incorporated institutions " may include business corporations, and that the trustee might under the terms of the will pay the income of the trust fund to one or more business corporations which maintain research departments for the purpose of making the business more profitable, cannot be sustained. Any institution to which income of the bequest is paid must apply it to a public use. No institution not authorized to apply to such use the moneys received by it could have been within the intention of the testatrix. Even if the testatrix intended that the trustee might use as an instrument in the execution of the trust a private corporation authorized to carry on research for the public benefit, if any such corporation exists, the fact that the money is earmarked for a " religious, charitable, educational or benevolent use " would render inconsequential the circumstance that the corporation has also other objects which are selfish in purpose.

*Matter of Frasch*, 216 App. Div. 797, affirmed.

(Argued March 30, 1927; decided May 3, 1927.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered April 16, 1926, which unanimously affirmed a decree of the New York County Surrogate's Court construing the residuary clause of the will of Elizabeth B. Frasch, deceased. .

*Charles A. Collin, John L. Wells* and *J. Arthur Leve* for Mildred L. Martin et al., appellants. Construing the language of paragraph 6 of the will of Mrs. Frasch, either by itself or in connection with the oral evidence, sound legal reasoning and intelligent common sense understanding of the language, concur in compelling the conclusion that Mrs. Frasch intended that the net income, from the perpetuity fund she sought to establish, should be devoted to the promotion of a beneficent business, rather than the endowment of an object of charity. A trust in perpetuity for such a business purpose is not a " charitable use " authorized by the Tilden Act. (*Butter-*

*worth* v. *Keeler*, 219 N. Y. 446; *British Museum* v. *White*, 2 Sim. & Stu. 594; *Attorney-General* v. *Heelis*, 2 Sim. & Stu. 76; *Matter of Davis*, 77 Misc. Rep. 72; *Allen* v. *Stevens*, 161 N. Y. 142; *Holland* v. *Alcock*, 108 N. Y. 312.) Paragraph 6 of the Frasch will is void for the further reason that the trustee is directed to pay the net income therefrom " to one or more incorporated institutions," which direction permits the trustee to pay that net income to business corporations. (*Matter of Wilcox*, 194 N. Y. 288; *Matter of Shattuck*, 193 N. Y. 446; *Matter of Robinson*, 203 N. Y. 380; *Matter of Cunningham*, 206 N. Y. 601; *Stewart* v. *Franchetti*, 167 App. Div. 541; *Manley* v. *Fiske*, 139 App. Div. 665; *Matter of Tactkian*, 109 Misc. Rep. 519; *Butterworth* v. *Keeler*, 219 N. Y. 446; *Matter of Beekman*, 232 N. Y. 365; *Smith* v. *Pond*, 90 N. J. Eq. 445.)

*Charles Angulo* and *James D. Ouchterloney* for Mary B. Norton, appellant. The application of the trust money to assist industrial research is not a charitable use. (*Butterworth* v. *Keeler*, 219 N. Y. 446.) Since the latitude of choice vested in the trustee would permit of the application of the trust income to a use that is not charitable, the entire trust is affected and rendered invalid. (*Morice* v. *Bishops of Durham*, 9 Ves. 405; 10 Ves. 521; *Matter of Shattuck*, 193 N. Y. 446; *Adye* v. *Smith*, 44 Conn. 60; *Mason* v. *Perry*, 22 R. I. 475; *Attorney-General* v. *National Provincial & Union Bank of England*, 1924, A. C. 262; *Matter of Clarke*, 1923 [2 Ch. Div.] 407; *Matter of Davidson*, 1909 [1 Ch. Div.] 567; *Stratton* v. *Physio-Medical College*, 21 N. E. Rep. 874; *Matter of Beekman*, 232 N. Y. 365.) The trust is invalid because the trustee is authorized to pay the income to a private institution to be used by the latter in its own research work, and the will fails to specify the use that is to be made of the resulting discoveries. (*Matter of Shattuck*, 193 N. Y. 446; *Butterworth* v. *Keeler*, 219 N. Y. 446; *Norris* v. *Thomson*, 19 N. J. Eq. 307; *Bascom* v. *Albertson*, 34 N. Y. 584.) The court below erred in

adopting the tests of " public usefulness " and " unselfish purpose " in determining what constitutes a charitable trust. The true test must still be sought in the Statute of Elizabeth (43 Eliz. ch. 4). (2 Perry on Trusts [6th ed.], 1142; *Williams* v. *Williams*, 8 N. Y. 525; *Allen* v. *Stevens*, 161 N. Y. 122; *Matter of Griffin*, 167 N. Y. 71; *Matter of Davis*, 77 Misc. Rep. 72; *Matter of MacDowell*, 217 N. Y. 454.) The Frasch trust does not fall within any of the classes of charitable trusts recognized by law. The failure of the will to devote to a charitable use the information obtained and the discoveries made through the research work, is fatal to the claim that the trust is a charitable one. (*Matter of Davis*, 77 Misc. Rep. 72.)

*Michael E. Reiburn* for William H. Blee et al., appellants. The trust sought to be set up by the provisions of paragraph 6 is void for the reason that it provides that the income shall be paid to one or more incorporated institutions in the United States, which provision permits the trustee to pay the income to incorporated institutions other than those which are charitable or public, and that the avowed purpose of the trust is not charitable or benevolent. (*Butterworth* v. *Keeler*, 219 N. Y. 446; *Matter of MacDowell*, 217 N. Y. 454; *Matter of Shattuck*, 193 N. Y. 446; *Matter of Robinson*, 203 N. Y. 380; *Matter of Cunningham*, 206 N. Y. 601; *Matter of Beekman*, 232 N. Y. 365; *Smith* v. *Havens Relief Fund Society*, 44 Misc. Rep. 594; 118 App. Div. 678; 190 N. Y. 557; *Haynes* v. *Carr*, 70 N. Y. 463.)

*Joseph E. Cavanaugh* for Cecelia E. Blee et al., appellants. The trust sought to be set up in paragraph 6 of said will is not a charitable one within the meaning of the Personal Property Law, section 12, and Real Property Law, section 113. (*Williams* v. *Williams*, 8 N. Y. 525; *Matter of Cunningham*, 206 N. Y. 601; 2 Perry on Trusts, 692; *Income Tax Commissioners* v. *Pensel*, [A. C. 1891] 531; *Matter of Sutro*, 155 Cal. 727; *Livesey* v. *Jones*, 55

[245 N. Y. 174]        Opinion, per LEHMAN, J.        [May,

N. J. Eq. 204.)    Under the terms of the trust set forth in paragraph 6 of said will, the trustee is permitted to pay the income to incorporated institutions other than those which are charitable and public.    (*Matter of Shattuck*, 193 N. Y. 446; *Matter of Robinson*, 203 N. Y. 380; *Matter of Cunningham*, 206 N. Y. 601; *Butterworth* v. *Keeler*, 219 N. Y. 446; *Manley* v. *Fiske*, 139 App. Div. 665; 201 N. Y. 546; *Stewart* v. *Franchetti*, 167 App. Div. 541.)

*William A. W. Stewart, George L. Shearer* and *John Henry Mottola* for executor and trustee, respondent. The trust created by the will of Elizabeth Blee Frasch is a trust for charitable purposes and falls squarely within the provisions of section 12 of the Personal Property Law and section 113 of the Real Property Law, known as the " Tilden Act."    (*Matter of MacDowell*, 217 N. Y. 454; *Matter of Cunningham*, 206 N. Y. 601; *Matter of Robinson*, 203 N. Y. 380; *Rotch* v. *Emerson*, 105 Mass. 431; *Sherman* v. *Richmond Hose Co.*, 230 N. Y. 468.)    The terms of the trust created by the will of Mrs. Frasch contain no provision which is in any way inconsistent with the provisions of the Tilden Act.    (*Matter of Shattuck*, 193 N. Y. 446; *Matter of Robinson*, 203 N. Y. 380.)

*Albert Ottinger, Attorney-General* (*Robert P. Beyer* of counsel), for People of the State of New York, respondent. The trust created under paragraph 6 of the last will and testament of the decedent is valid as a trust for educational purposes.    (*Matter of MacDowell*, 217 N. Y. 454; *Matter of Davidge*, 200 App. Div. 437; *Matter of Robinson*, 203 N. Y. 380; *Matter of Cunningham*, 206 N. Y. 601; *Starr* v. *Selleck*, 145 App. Div. 869; 205 N. Y. 545; *Mercer* v. *Chamberlain Institute*, 187 App. Div. 763.)

LEHMAN, J.    In the proceedings for the probate of the last will and testament of Elizabeth Blee Frasch, a supplemental decree has been made and entered which adjudges that the testatrix by the sixth paragraph of her will has made a valid disposition of the rest, residue and remainder

1927.] Opinion, per LEHMAN, J. [245 N. Y. 174]

of her property and that the trust created in that paragraph is in all respects legal and valid. We have concluded that this adjudication is correct.

The sixth paragraph of the will reads as follows:

"All the rest, residue and remainder of my estate, real and personal, I give, devise and bequeath to the United States Trust Company of New York, IN TRUST, however, for the purpose of establishing a fund for chemical research, which fund shall be known as the Herman Frasch Foundation for Chemical Research. I direct that the said trustee shall hold, manage, invest and reinvest the said fund, collect the rents, issues and profits thereof and after paying its proper charges and expenses, pay over the net income therefrom to one or more incorporated institutions in the United States, which shall be selected by the said trustee after advising with The American Chemical Society, upon the condition that the said institutions shall agree that the money so received shall be devoted to research in the field of agricultural chemistry, with the object of attaining results which shall be of practical benefit to the agricultural development of the United States. The payment of said income to the institutions so selected shall continue for the period of five years after my death, and before the expiration of the said five years, the trustee shall request The American Chemical Society to examine into the work done by the said institutions with the funds received from the Foundation, and to report to the trustee whether in its opinion, satisfactory progress has been made with the funds of the Foundation, toward the attainment of such practical results, and if the said Society shall report that in its opinion satisfactory progress has not been made by any institution, the trustee shall thereupon cease to make payments from the Foundation to that institution, and may select another institution in the same manner as above outlined, which institution, when so selected, shall receive such payments for the further term of five years, and every five years

[245 N. Y. 174]    Opinion, per LEHMAN, J.    [May,

after my death the trustee shall obtain such a report from The American Chemical Society, and shall either continue to make payments to the institution then receiving such payments for the further term of five years, or may select other institutions as above provided, to receive the said payments for the ensuing five years. The trustee is authorized to use so much of the income from the said fund as may be necessary to pay the expenses and compensation of The American Chemical Society for advising and reporting as above provided."

The testatrix undoubtedly intended to create a trust for purposes which would advance the public welfare. Intention to advance the public welfare is not sufficient to give validity to a trust in perpetuity for the benefit of indefinite and uncertain persons, unless such trust is authorized by chapter 701 of the Laws of 1893, now section 12 of the Personal Property Law (Cons. Laws, ch. 41). That statute applies to a " gift, grant, or bequest to religious, educational, charitable or benevolent *uses*." The enactment of that statute was part of a general scheme to restore to the courts of equity the power formerly exercised by Chancery in the regulation of gifts for charitable purposes. (*Matter of Cunningham*, 206 N. Y. 601; *Allen* v. *Stevens*, 161 N. Y. 122.) The provisions of the statute must be read in the light of its history and purpose. We hold that under a fair construction of the language of the will, the trust created thereby is within the provisions of the statute so read.

The testatrix has directed that the money shall be held for the purpose of " establishing a fund for chemical research." Its income must be used for research. It must be paid over to " one or more incorporated institutions in the United States, which shall be selected by the said trustee after advising with The American Chemical Society." Such payment may be made only " upon the condition that the said institutions shall agree that the money so received shall be devoted to research in the field of

agricultural chemistry with the object of attaining results which shall be of practical benefit to the United States." No institution to which payment of the income is made may use it for other purpose than research in the designated field and with the designated object. Other use would be a diversion of the income of the trust.

Research is the method used by modern universities and scientific foundations to increase the sum of human knowledge. Research conducted for such purpose and by such institutions is clearly " educational " and " benevolent " within the meaning of the statute. Not every charitable, educational or benevolent use is enumerated in the statute 43 Elizabeth (c. 4) commonly called the Statute of Charitable Uses, though that statute was intended to limit the trusts for charitable uses which might be enforced by courts of equity. Conceptions of public charity, benevolence and education change with the passing generations. When the courts are called upon to give effect to a statute covering trusts to " religious, educational, charitable or benevolent uses," they construe those words as including at least those uses which prevailing conceptions bring within the spirit of the Statute of Elizabeth. (*Williams* v. *Williams*, 8 N. Y. 525; *Matter of Cunningham, supra.*)

No new conceptions of public benefit may, however, enlarge such words to include a *use* of the trust property for private profit or benefit. Doubtless the dominant purpose in the creation and management of a business corporation may occasionally be the advancement of the public welfare. None the less, where the income of the corporation may be applied to the profit of the founders, " business has a beginning and charity an end." (*Butterworth* v. *Keeler*, 219 N. Y. 446.) Where the terms of the trust are so indefinite that the trustees may apply the income if they see fit " to undertakings of public utility," the possibility that such undertakings may include private enterprises renders the trust invalid. ( *Kendall* v. *Granger*,

[245 N. Y. 174]          Opinion, per LEHMAN, J.                    [May,

5 Beavan, 300.) A "private pecuniary enterprise" is not a "public charity, even if indirectly it serves charitable ends," per HOLMES, J., in *Stratton* v. *Physio-Medical College* (149 Mass. 505). So, too, a trust which may include social, educational or moral benefit confined to members of a corporation and in which the general public has no direct participation, has been declared a trust for a private use. (*Attorney-General* v. *Hewer*, 2 Vernon's Reports, 386; *Carne* v. *Long*, 2 De G., F. & J. 75; *Miley* v. *Atty.-General*, [1918] 1 Irish Rep. 455.) In such cases since the use is not charitable even in a broad sense, an intent or purpose on the part of the creator of the trust to confer an indirect benefit upon the public does not change the character of the trust. Not even if the designated use might tend to create the contemplated public benefit would the rule be different. "There is no authority for holding a charitable tendency to be a charitable use; in other words, that a gift to a person for his own benefit, whereby consequential charity may arise, is not a charitable use." (*Attorney-General* v. *Haberdashers Company*, 1 Mylne & Keen's Reports, 420, per BROUGHAM, Lord Chancellor.) Benevolent motive or a purpose to confer a general benefit does not bring a trust within the terms of the statute if the trust permits a use which is "personal, private or selfish." (*Matter of MacDowell*, 217 N. Y. 454.) These principles are well established. Their validity is not challenged by expressions in judicial opinions in which the term "purpose" is used as synonymous with "use." Doubtless the purpose or intention of the creator of the trust often dictates the construction which the courts place upon the language he has employed to define the "use" of the trust. It is nevertheless the construction which the court places upon the language of the will under consideration and not the unquestioned public spirit and unselfish purpose of the testatrix which determines the validity of the trust she has created.

The trustee must pay over the income of the trust fund

1927.]     Opinion, per LEHMAN, J.     [245 N. Y. 174]

to " one or more incorporated institutions." The recipient must devote the money so received to " research in the field of agricultural chemistry." It is said that the term " incorporated institutions " may include business corporations, and that the trustee might under the terms of the will pay the income of the trust fund to one or more business corporations which maintain research departments for the purpose of making the business more profitable. If the trustee may under the will choose a business corporation as one of the " incorporated institutions " to which the income of the trust fund may be paid, and if further such business corporation may use that income for research to advance its own business interests, then undoubtedly the trust created is not valid. We have held in *Matter of Shattuck* (193 N. Y. 446) that a trust is invalid where a bequest is made to a trustee, " the rents, profits and income thereof to be expended by him annually and to be paid over to religious, educational or eleemosynary institutions as in his judgment shall seem advisable." The court in that case construed the words " religious, educational or eleemosynary institutions " as including " educational institutions " organized as stock corporations and conducted wholly for profit. Under that interpretation of the terms of the trust, the conclusion was inevitable that the trust was invalid, because, as the court pointed out, " the will does not in terms refer in any way to the *use* to be made of the income of the trust fund. Such income is not in terms devoted to any purpose or object, and there is no direction by the testatrix to the institutions to which the income on the trust fund is paid as to what use they shall make of such gift. Its devotion to charity is dependent upon the object and purposes of the several institutions which by the grace of the trustee may become the beneficiaries thereof."

In later opinions this court has pointed out the narrow scope of the decision in the *Shattuck* case. (*Matter of Robinson,* 203 N. Y. 380; *Matter of Cunningham,* 206

N. Y. 601.) " The decisive consideration was the contrast which the court discerned in the mind of the testatrix between purposes that were educational and purposes that were eleemosynary." The decision " lays down no principle of large and general application. It defines the meaning of a particular will, and later cases have held that it must be limited to its special facts." (*Butterworth* v. *Keeler*, 219 N. Y. 446.) Courts in other jurisdictions have interpreted the word "institutions" as including both private and public corporations when the language of a deed or will showed intention that the term should not be limited to corporations that were public, charitable or eleemosynary. (See *Thomson's Executors* v. *Norris*, 20 N. J. Eq. 489; *Taylor* v. *Keep*, 2 Ill. App. 368; *Matter of Clarke*, [1923] 2 Ch. Div. 407; *Minty* v. *Bourne*, [1909] 1 Ch. 567; *Grimond* v. *Grimond*, 1905 A. C. 124.)

The meaning of the word " institutions " is not so fixed that necessarily it must be held to include corporations organized for private as well as public purposes. Indeed when not used in context indicating a broader definition it may well be held to denote primarily organizations created for a public purpose. " It is a little difficult to define the meaning of the term ' institution ' in the modern acceptation of the word. It means, I suppose, an undertaking formed to promote some defined purpose having in view generally the instruction or education of the public," per Lord MacNaghten in *Mayor of Manchester* v. *McAdam* ([1896] A. C. 500). In the same case Lord Herschell cited with approval the definition contained in the Imperial Dictionary: "A system, plan, or society, established either by law, or by the authority of individuals, for promoting any object, public or social." Definitions might be cited from all dictionaries of recognized authority that the word " institution " at least suggests an organization formed for a public purpose. (See, also, *Matter of McClellan's Will*, 46 N. B. 161.) At least where intention to provide for a public charitable

1927.]          Opinion, per LEHMAN, J.          [245 N. Y. 174]

use may be inferred, the word " institution " need not be given a construction which contravenes that intention. (*Matter of Smith*, 36 Times L. Reports, 416.)

In the present case, as we have pointed out, the testatrix has provided that any institution receiving income from the trust fund must use it for research in the field of agricultural chemistry. Though there may be private corporations which are permitted by their charters or certificates of incorporation to conduct research as an incident to and for the benefit of a commercial business, the research which was authorized by the terms of the will was not research so conducted. The authorized research was to be conducted " with the object of attaining results which shall be of practical benefit to the agricultural development of the United States." Though it is conceivable that research, where the results are appropriated by a commercial organization, might indirectly benefit the general agricultural development of the United States, it is hardly conceivable that this testatrix intended to devote her property to such private use when she indicated that the *object* of the research must be a general benefit. Indeed, the provisions of the will that the work done by the institutions receiving the income must be subject to the examination of the American Chemical Society, whose membership includes men engaged in the pursuit both of pure science and of science applied to commercial use, negative the secrecy which surrounds research by commercial organizations. In the case of *Rotch* v. *Emerson* (105 Mass. 431) the court held that from the context in which a testator had used the words " for the promotion of agricultural or horticultural improvements " the inference must be drawn that the " testator had in his mind the acquisition and dissemination of knowledge, the study and inculcation of principles affecting those departments of industry or of sciences relating thereto." Similar inference is dictated by the language used in the will now under consideration.

A bequest for such use is clearly within the provisions of our statute for " charitable uses." Any institution to which income of the bequest is paid must apply it to a public use. No institution not authorized to apply to such use the moneys received by it could have been within the intention of the testatrix. Even if the testatrix intended that the trustee might use as an instrument in the execution of the trust a private corporation authorized to carry on research for the public benefit, if any such corporation exists, the fact that the money was earmarked for a " religious, charitable, educational or benevolent use " would render inconsequential the circumstance that the corporation had also other objects which are selfish in purpose. (*Miley* v. *Attorney-General*, [1918] 1 Irish Rep. 455; *Matter of Shattuck, supra.*)

Judgment should be affirmed, with costs to respondents payable out of the estate.

C<span style="font-variant:small-caps">ARDOZO</span>, Ch. J., P<span style="font-variant:small-caps">OUND</span>, C<span style="font-variant:small-caps">RANE</span>, A<span style="font-variant:small-caps">NDREWS</span>, K<span style="font-variant:small-caps">ELLOGG</span> and O'B<span style="font-variant:small-caps">RIEN</span>, JJ., concur.

Judgment affirmed, etc.