In the Matter of the Intermediate Judicial Settlement of the Accounts of COURTNEY R. SANFORD and Another, as Executors, etc., of NOAH D. OLMSTEAD, Deceased.

Surrogate's Court, Delaware County, January 17, 1928.

Wills — construction — decedent, after giving one of his executors sum of $30,000 in trust to pay " the income only " therefrom " to the Foreign Missionary Society of the Methodist Episcopal Church," gave an additional $20,000 to another of his executors in trust to invest and pay income thereof " to the Home Missionary Society of the Methodist Episcopal Church "— identity of beneficiaries established — will created express trusts for charitable and religious purposes — legacies do not vest at once since testator never intended corpus of fund to pass to beneficiaries — administration of trust in future may be regulated pursuant to Personal Property Law, § 20 — decedent gave residue of estate in trust and directed income to be used for such " worthy, charitable and benevolent works " as executors might deem proper — said trust is charitable in its nature and does not fail because particular objects are not specified — trusts created do not illegally suspend power of alienation.

Decedent, after giving one of his executors the sum of $30,000 in trust " to invest and keep invested " and pay " the income only " therefrom " to the Foreign Missionary Society of the Methodist Episcopal Church," gave an additional $20,000 to another of his executors in trust to invest and pay the income thereof " to the Home Missionary Society of the Methodist Episcopal Church."

The identity of the beneficiary named as " The Foreign Missionary Society of the Methodist Episcopal Church " will be regarded as " The Board of Foreign Missions of the Methodist Episcopal Church," and the beneficiary designated as " The Home Missionary Society of the Methodist Episcopal Church " as " The Board of Home Missions and Church Extension of the Methodist Episcopal Church."

Since the language used by decedent was clear and explicit, it is evident decedent intended to vest $30,000 in the name of the executor for the purpose of investing and keeping invested the corpus of the trust and to pay the income only to the Board of Foreign Missions of the Methodist Episcopal Church, and that he intended the income of the $20,000 trust should be paid to the Board of Home Missions and Church Extension of the Methodist Episcopal Church.

Furthermore, the provisions of the will created express and valid trusts for charitable and religious purposes to apply the income for the specific benefit of the religious and charitable operations of the foreign and home mission boards of the Methodist Episcopal Church.   The purpose of each trust is within the purview of the statute, for the purpose and object of the Board of Foreign Missions and the Board of Home Missions and Church Extension of the Methodist Episcopal Church are necessarily charitable and religious.

However, the legacies do not vest at once, since it is manifest that the testator did not intend the corpus of the funds to pass to the beneficiaries at any time, for he specifically provided that the " income only " shall be paid to each beneficiary.

The question of administration of the trusts in the future presents no difficulty, since section 20 of the Personal Property Law now provides that on the death

of a sole surviving trustee of an express trust, the estate vests in the Supreme Court and shall be executed by some person appointed by the court.

A further provision in said will by which deceased gave the residue of his property to his executors in trust to invest the corpus of the fund and use the income for such "worthy, charitable and benevolent works" as in their judgment they might deem proper, creates a charitable trust which is not void because the beneficiaries are uncertain; a trust does not fail because the particular objects are not specified, where its purpose is clear and it is unquestionably charitable.

Nor does the will create an illegal suspension of the power of alienation, since charitable trusts are not affected by the provisions of section 11 of the Personal Property Law and section 42 of the Real Property Law.

PROCEEDING for intermediate judicial settlement of accounts of executors combined with a proceeding for a construction as to the validity and effect of the 11th, 12th and 14th clauses of the will of Noah D. Olmstead.

Noah D. Olmstead, a resident of the town of Middletown in the county of Delaware, died on the 15th day of December, 1921, at Beaumont, in the State of California. The deceased had never married. The sole surviving next of kin and heirs at law consist of eight cousins.

The last will and testament of the decedent, which had been drawn by himself, was admitted to probate on the 9th day of January, 1922. Upon the return day of the citation to show cause why such will should not be admitted to probate, D. Rowland Sanford and Ursula S. Hull, two of the next of kin and heirs at law of the testator, filed an answer putting in issue the validity of the 11th, 12th and 14th clauses of said will. The contestant D. Rowland Sanford subsequently died and Nancy Sanford, as administratrix of his estate, has been substituted as a party to this proceeding.

By consent of all parties the will of the testator was admitted to probate and the determination of the issues raised by the answer was postponed until an accounting by the executors.

The testator had somewhat extensive property interests in the State of California and in other parts of the West. Proceedings in relation to such property have been protracted and the executors have only recently filed an intermediate account for judicial settlement. The parties have submitted their proofs in the construction proceedings. No objections have been filed to the intermediate account of the executors. The sole issues presented for determination relate to the validity and effect of the three clauses in the will above mentioned. The clauses in question read as follows:

" *Eleventh*. I give and bequeath unto Courtney R. Sanford, residing at Margaretville, New York, one of my executors hereinafter named, the sum of Thirty thousand dollars ($30,000), in trust, and create him trustee of said fund for the following purposes to wit: that he my said trustee is to invest and keep invested the

said sum of thirty thousand dollars and the income only from said trust fund shall be paid by my said executor as trustee, to the Foreign Missionary Society of the Methodist Episcopal Church.

" And I further especially confer upon him my said trustee, all and every full power and authority to name and appoint and direct a trustee to continue the said trust fund after his death in order to carry out the intents set forth by me in the above trust provision, as he in his judgment may deem best and proper.

" *Twelfth.* I also give and bequeath unto Frank Kittle, residing at Margaretville, N. Y., one of my executors hereinafter named, the sum of twenty thousand dollars ($20,000) in trust, and create him trustee of said trust fund for the following purposes to wit: That he my said trustee shall invest and keep invested the said sum of twenty thousand dollars and the earnings and income only from said trust fund and I direct him to pay to the Home Missionary Society of the Methodist Episcopal Church, and I further especially confer upon him my said trustee, all and every full power and authority to name, appoint and direct a trustee to continue the said trust fund after his death in order to carry out the intents set forth by me in the above trust provision, as he in his judgment may deem best and proper. * * *

" *Fourteenth.* All the rest, residue and remainder of my property of all kinds both of real estate and personal property of every name and nature and wherever situate, I give and bequeath to my executors, Courtney R. Sanford and Frank Kittle, hereinafter named, in trust, to be invested by them and the income from such trust fund I direct them to use for such worthy charitable and benevolent works as they may in their judgment select and determine, and I do hereby confer upon them, my said executors as trustees, absolute power and authority to select, choose and determine whatever objects, works, charity or charitable or benevolent works which they may select or choose to expend the income or earnings from the above trust fund."

The will of the testator, after providing for the payment of debts, bequeathed to his cousins, his sole next of kin and heirs at law, certain specified sums, three cousins receiving bequests of $1,000 each, two bequests of $2,000 each, one a bequest of $3,000, one a bequest of $5,000, and the remaining cousin being the life beneficiary of a trust created for her benefit in the sum of $2,000, with remainder over at her death to her descendant or descendants surviving. The will likewise bequeathed to the Methodist Episcopal Church of Margaretville, N. Y., the sum of $5,000.

The will contains a provision that if any of the specific legatees, with the exception of one, died prior to the testator, the bequest

should lapse and become a part of the residuary estate.   This clause is of no consequence, as all of the beneficiaries survived the testator.

The testator was an active and prominent business man in the village of Margaretville in the county of Delaware, president of the Peoples' National Bank in that village and possessed of a considerable estate.   The testator appointed as his executors two of his business associates in the bank of which he was president.

The beneficiary designated in the 11th clause as " Foreign Missionary Society of the Methodist Episcopal Church " appears in this proceeding as " The Board of Foreign Missions of the Methodist Episcopal Church," and the beneficiary named in the 12th clause as " Home Missionary Society of the Methodist Episcopal Church " appears as " The Board of Home Missions and Church Extension of the Methodist Episcopal Church."

*Andrew C. Fenton,* for Courtney R. Sanford and Frank Kittle, executors and trustees.

*Ives & Craft,* for Ursula S. Hull and Nancy Sanford, as administratrix of D. Rowland Sanford, deceased.

*James A. Betts* [*Virgil B. Van Wagonen* of counsel], for The Board of Foreign Missions of the Methodist Episcopal Church and The Board of Home Missions and Church Extension of the Methodist Episcopal Church.

*Albert Ottinger, Attorney-General,* successor to *Charles D. Newton, Attorney-General.*

McNAUGHT, S.   The protracted proceedings apparently necessary in connection with the administration of the estate of Noah D. Olmstead have resulted in an unjustifiable delay in the determination of the validity of certain provisions of his will.   The situation, however, seems to be one for which no one is justly censurable, nor has any injury resulted to the rights of any of the beneficiaries.

The testator designated as the beneficiaries of the trusts he sought to create in the 11th and 12th clauses of his will, certain boards of the Methodist Episcopal Church.   The first question to determine is the identity of the beneficiaries named in the clauses in question.   In the 11th clause the beneficiary is named as " Foreign Missionary Society of the Methodist Episcopal Church " and in the 12th clause as " Home Missionary Society of the Methodist Episcopal Church."   It is satisfactorily established that the official boards of the Methodist Episcopal Church intended to be designated by the testator are correctly designated, respectively, as " The Board of Foreign Missions of the Methodist Episcopal Church " and " The Board of Home Missions and Church Extension

16

Surrogate's Court, Delaware County, January, 1928.     [Vol. 131

of the Methodist Episcopal Church." The evidence of identity is entirely satisfactory. The proofs are sufficient to establish that the testator intended these respective boards to be the beneficiaries of the clauses in question. The identity of beneficiaries may be established by proof. (*Matter of Howland,* 120 Misc. 224; *House of Good Shepherd* v. *Rector, etc.,* 207 App. Div. 129.)

The validity of the trusts sought to be created by the testator is vigorously attacked by the petitioners. It is contended: *First,* that as charitable trusts they are void for uncertainty of beneficiaries and indefiniteness of purpose; and *second,* that they violate the rule against perpetuities. In the opinion of the court both objections are untenable.

The language used by the testator requires no interpretation. It is not obscure, nor its meaning uncertain. The testator in clear, explicit and unmistakable language has declared his desire and purpose. The testamentary intent not being obscure, the principle to be applied in a determination as to the validity and effect of the clauses in question is well established. It is the duty of the court to carry out and effectuate the intention of the testator.

If the will under consideration is susceptible of two constructions, one of which will render it valid and the other invalid, the former will be adopted. (*Matter of Lally,* 136 App. Div. 781; affd., 198 N. Y. 608; *Seitz* v. *Faversham,* 205 id. 197, 202; *Matter of MacDowell,* 217 id. 454, 465.)

This principle is to be upheld even more strongly in favor of charitable trusts and bequests, as such beneficial objects are favored in the law. (*Buell* v. *Gardner,* 83 Misc. 513; *St. John* v. *Andrews Inst.,* 191 N. Y. 254; *Matter of Robinson,* 203 id. 380, 388.)

By the 11th clause of his will it was the evident purpose of the testator to vest the sum of $30,000 in the named trustee as a trustee for the purpose of investing and keeping invested the corpus of the trust and to pay the income only to the named beneficiary. The testator evidently desired and intended that his business associate, a comparatively young man and one in whom he had implicit confidence, should handle and control the investment of this fund to the end that the income from it might be used for promoting the religious and charitable purposes of the Foreign Missionary Board of the church of which he was a devoted member. It is manifest that the testator did not intend that the title to the principal of this fund should vest in the beneficiary, nor that it should be paid over for investment to the beneficiary. Having set forth this purpose he followed by vesting a power of appointment in his named trustee to designate a successor to carry out the purposes of the trust.

Misc. 238] Surrogate's Court, Delaware County, January, 1928.

Under the 12th clause the same purpose is manifest, the same motives are apparent and the same provisions occur, excepting only for the purpose of administering this trust he selected another business associate in whom he likewise had implicit confidence, and directed that the income only of such trust fund of $20,000 should be paid to the board of his church in control of home missionary work.

The changes that have occurred in this State as to the law relative to trusts for charitable and religious purposes; the varying decisions from the case of *Williams* v. *Williams* (8 N. Y. 525) to the decision in the case of *Tilden* v. *Green* (130 id. 29); and the subsequent enactment of the Charitable Uses Act, now section 12 of the Personal Property Law and section 113 of the Real Property Law, have been so often thoroughly and exhaustively discussed that it is unnecessary to incumber this memorandum with an analysis or citation of the various phases of the numerous cases involving such trusts.

It appears to the court that the 11th and 12th clauses of the will of the testator create express trusts for a charitable and religious purpose to apply the income for the specific benefit of the religious and charitable operations of the Foreign Mission Board and the Home Mission Board of the Methodist Episcopal Church, with power in the trustee named to appoint and designate a successor; that the purpose is clearly within the purview of the Charitable Uses Act; that it is for not only a legal but a laudable purpose, and that the title to the fund, the income of which is to be devoted for such charitable and religious purposes, vests in the named trustee. (*Allen* v. *Stevens*, 161 N. Y. 122; *Rothschild* v. *Schiff*, 188 id. 327; *Matter of Robinson, supra; Matter of Cunningham*, 206 N. Y. 601; *Matter of MacDowell, supra; Matter of Frasch*, 245 N. Y. 174; *Matter of Durbrow*, Id. 469; *Butterworth* v. *Keeler*, 219 id. 446; *Camp* v. *Presbyterian Society*, 105 Misc. 139; *Utica Trust & Deposit Co.* v. *Thomson*, 87 id. 31.)

The purpose and object of the Board of Foreign Missions of the Methodist Episcopal Church and the Board of Home Missions and Church Extension of the Methodist Episcopal Church are necessarily charitable and religious. Otherwise, there could be no reason for their existence. The very title of the organizations is sufficient to indicate without question their purpose is religious and charitable. The object for which each is organized has been satisfactorily established by proof.

Without referring at length to the authorities above cited, the language of Judge POUND in the recent case of *Matter of Durbrow* (*supra*, 474), applies to the will in question: " The intention to

make a gift for charitable and religious purposes pervades and dominates the whole bequest and the court will give it effect if it is possible so to do by the application of the most liberal rules of construction that the law will permit."

The petitioners rely to a considerable extent upon the decision in *Matter of Shattuck* (193 N. Y. 446). The *Shattuck* case has been many times relied upon to defeat testamentary trusts. It has, however, been limited, distinguished and strictly confined to its own facts by subsequent decisions.

In this case the nature of the purpose for which the beneficiaries exist is not uncertain. It must, therefore, necessarily follow that the charitable purpose of the gift to such beneficiaries is not indefinite. So construed, the purpose is definite and under the language used the beneficiaries are certain.

It is contended by the beneficiaries under the 11th and 12th clauses of the will, that the two legacies vest at once and that the court should decree that such legatees, by their correct corporate names, are the present owners of the fund of which the income was bequeathed to them. The court cannot agree with this contention. It is based upon a line of cases holding that a gift of the income of property to a person without limitation as to time is a gift of the capital where no other disposition of the capital is made. That such is the general rule is undoubtedly true. (*Matter of Allen*, 111 Misc. 93; *Matter of Goldmark*, 186 App. Div. 447; *Matter of Dibble*, 76 Misc. 413; *Mott* v. *Richtmyer*, 57 N. Y. 49; *Hatch* v. *Bassett*, 52 id. 359.)

It is, however, subject to the qualification that where it is manifest that the intention of the testator was to give only the use, the rule must yield to the stronger force of intention. (*Paterson* v. *Ellis*, 11 Wend. 259, 298; *Locke* v. *F. L. & T. Co.*, 140 N. Y. 135, 145, 146; *Matter of Hull*, 97 App. Div. 258, 265, 266.)

In *Paterson* v. *Ellis* (*supra*) the rule is stated in the opinion of Senator EDMONDS as follows: " It is also a rule of law that a devise of the interest or of the rents and profits is a devise of the thing itself, out of which that interest or those rents and profits may issue. [Citing cases.] The rule, however, is to be understood with some limitations. Where the intention of the testator to give only the use, is clear, manifest and undisputed, the rule must yield to the stronger force of the intention; but where it is doubtful whether the use only or the absolute ownership was intended to be given, the rule has been allowed to have a controlling effect."

This statement of the rule is quoted and adopted in *Locke* v. *F. L. & T. Co.* (*supra*) and in *Matter of Hull* (*supra*).

It is manifest that the testator did not intend the corpus of the

fund to pass to the beneficiaries at any time. He specifically provided that the income " *only* " should be paid to the beneficiary.

The rule could not reasonably be applied in view of the language used by the testator. In express terms the gift to each of the church boards is limited to the income; by definite provision the fund itself, in each clause, is given to the trustees for the purpose of investment and paying over the income to the beneficiaries. No case is made for the application of the rule that a gift of income without limitation of time is a gift of the capital of the fund.

The court, in the face of the specific language used by the testator, cannot defy his purpose and disregard his intent by holding the beneficiaries are entitled to payment of the principal of the trust he sought to create for their benefit. The perpetuity created by Noah D. Olmstead must be sustained as a whole if at all. It cannot be divided and one part of the purpose he had in mind carried out and another part disregarded. The bequest, if it is to be sustained, must be sustained as an express trust in perpetuity, the title to the trust fund vesting in the trustee and his successor. (Pers. Prop. Law, § 12; Real Prop. Law, § 113.)

The question of the administration of the trust in the future presents no difficulty, as the statute now provides that on the death of a last surviving or sole surviving trustee of an express trust, the trust estate vests in the Supreme Court and shall be executed by some person appointed by the court, whom the court may invest with all or any of the powers and duties of the original trustee or trustees. (Pers. Prop. Law, § 20, as amd. by Laws of 1911, chap. 217.)

The trusts attempted to be set up in the 11th and 12th clauses of the will, being express trusts, the title vesting in the trustee and being created for the benefit of religious organizations, the chief purpose of which is the dissemination of the Christian religion, they must be sustained.

By the 14th clause of the will the testator bequeathed the residue of his property to the executors in trust, the corpus of the fund to be invested and the income to be used for such " worthy, charitable and benevolent works " as in the judgment of the executors might be proper, and to make his purpose clear beyond dispute the testator proceeded to say: " I do hereby confer upon them, my said executors as trustees, absolute power and authority to select, choose and determine whatever objects, works, charity or charitable or benevolent works which they may select or choose to expend the income or earnings from the above trust fund." The purpose of this trust is clear. It is entirely charitable in its nature. The income from the trust fund is to be used solely for

charitable purposes. It is true the charitable objects for the benefit of which the income is to be devoted are uncertain. The beneficiaries are to be selected and the purposes to which the income shall be devoted within the limits specified by the testator are to be determined by the named trustees.

Where the purpose of the trust is clearly and unquestionably charitable, it is not to fail because the particular objects which will receive the benefit of the testator's bounty are not specified. (Pers. Prop. Law, § 12; Real Prop. Law, § 113.)

It was for the very purpose of sustaining trusts of this character that the Charitable Uses Act was enacted subsequent to the decision in the case of *Tilden* v. *Green* (130 N. Y. 29).

The authorities heretofore cited bear upon the validity of the 14th clause of the will and there are many additional authorities which warrant holding the trust is valid. The rule to be applied in general to such trusts has been twice stated by the Court of Appeals in recent decisions. In *Matter of MacDowell (supra,* 460) the court said: " When the purpose accomplished is that of public usefulness unstained by personal, private or selfish considerations, its charitable character insures its validity." In the very recent case of *Matter of Durbrow (supra,* 476, 477), Judge POUND, speaking for the court, sums up the rule in the following language: " Although the general charitable purpose of the gift as thus construed is not indefinite, the beneficiaries are indefinite, but the trust is not affected thereby. Definite legal gifts in trust, religious and charitable in character, are not, since the adoption of the Tilden Act (L. 1893, ch. 701), to be declared invalid by reason of indefiniteness of beneficiaries."

These general rules, to be applied to gifts of the character made by the testator in the 14th clause of his will, have been many times passed upon by the courts since the adoption of the Tilden Act.

In *Bowman* v. *Domestic & Foreign Missionary Society* (182 N. Y. 494) the testatrix left a bequest to the Indian Missions and Domestic Missions of the United States. There was no such organization. Although the language used did not express a trust and no existing beneficiary was named, the bequest was upheld as a charitable trust vesting in the Supreme Court.

In *Matter of Robinson (supra)* the trust was to provide support and education and such other financial aid as might seem to the trustees fitting and proper to such persons as they might select as being in need of the same. It was upheld by the Court of Appeals.

In *Matter of Cunningham (supra)* the bequest was to the executors and trustees to be by them applied in their best judgment and discretion to such charitable and benevolent associations and

institutions as they might select and in such sums as they deemed proper. This trust was likewise sustained.

In *Matter of Groot* (173 App. Div. 436; affd., 226 N. Y. 576) the language read " from time to time make such reasonable charitable donations, contributions or gifts, to such persons, corporations, associations or institutions in the Town of Guilderland, Albany County, N. Y., as may, in the judgment of my said trustee be in need and worthy thereof, he having been fully advised of my purposes and inclinations in that respect." The trustee had renounced his trust. It appeared in the proceeding that the testatrix had never advised the trustee of her purposes or inclinations. The trust was nevertheless sustained.

In *Matter of Frasch* (*supra*) the will created a trust for the purpose of establishing a fund in aid of chemical research and directed the trustee to pay over the net income to an institution to be selected by it, such institution to devote the money received to certain specified research. The court held the trust so created was valid and within the provisions of the statute.

In *Matter of Durbrow* (*supra*) the will directed the executor or executrix, " to distribute where he, or she as his successor or substitute, in his or her judgment shall consider it will be most effective in the advancement of Christ's Kingdom on earth." The court unanimously held a gift in trust would be implied and the trust was not affected by indefiniteness of beneficiaries.

Clearly the 14th clause creates a charitable trust. It is not void because the beneficiaries are uncertain. In the event of a vacancy in the office of trustee, section 20 of the Personal Property Law would apply and the trust would vest in the Supreme Court.

Considerable stress is laid upon the fact that the trusts created in the 11th, 12th and 14th clauses of the will create an illegal suspension of the power of alienation. The effect of the disposition of his property by testator under these clauses is undoubtedly to create a perpetuity in each case. Charitable trusts, however, are not within the ordinary rule and are not affected by the provisions of section 11 of the Personal Property Law and section 42 of the Real Property Law. (*Williams* v. *Williams*, 8 N. Y. 525; *Allen* v. *Stevens, supra; Matter of Griffin*, 167 N. Y. 71, 79, 81; *Matter of Davidge*, 200 App. Div. 437; *Matter of MacDowell, supra*.)

It must, therefore, he held that the 14th clause of the will in question creates a valid trust for the charitable purposes therein expressed.

A decree may be prepared in conformity to the views above expressed and may be settled before the surrogate on five days' notice. All questions in relation to costs will be determined on the settlement of the decree.