In the Matter of the Will of BERTHA L. HAMILTON, Deceased.

Surrogate's Court, Chautauqua County, August 25, 1945.

*Lombardo & Pickard* and *Robert M. Dale* for Robert Lamberton and another, petitioners.

*J. Russell Rogerson* and *Sidney T. Hewes* for Thomas P. Heffernan, as executor of Bertha L. Hamilton, deceased, respondent.

*Nathaniel L. Goldstein, Attorney-General of the State of New York* (*Wortley B. Paul* of counsel), respondent.

BODINE, S. This is a proceeding to test the validity of the plan of testatrix, Bertha L. Hamilton, for disposing of her residuary estate which will probably exceed $400,000 in value. Her will was admitted to probate after objections filed by the petitioners in this proceeding, or certain of them, had been withdrawn. Testatrix and her deceased husband were childless, and the nearest relatives were one brother and two half brothers, one of whom, George J. Lamberton, has since died.

The will, after minor provision for certain relatives and others, disposes of the residue as follows:

" All of the rest, residue and remainder of my property, whether real, personal or mixed, I give, devise and bequeath to my executors hereinafter named, for the following uses and purposes:

" I direct my said executors to appoint a committee, to consist of the proper trust officer of my corporate executor, and the personal executor named, together with the senior Justice of the Supreme Court of the State of New York, in and for the Eighth Judicial District, said committee being hereby appointed as trustees, to act for the following purposes:

" I direct my executors hereinafter named, to hold, for the purposes of an animal home or hospital, such as this committee shall decide, my homestead property, on West Main Street, in Ripley, New York, and to use the remainder of my estate, and the income and interest thereon, for the care and comfort of such animals, as their judgment shall determine, this committee to have the power, and I direct my executors to comply with the judgment of a majority of the committee, in investing, and reinvesting, any and all property or securities, to the end that this home or hospital shall be maintained for the comfort and benefit of dumb animals.

" If the personal co-executor should predecease me, or should die before the execution of the trust herein imposed, then and in that case, I direct that the third member of this committee shall be the second senior Justice of the Supreme Court of the State of New York, in and for the Eighth Judicial District, and, in like manner, such committee of three shall be continued, in the event of the death of any one of them, by the addition of the then first or second senior Justice of the Supreme Court, in and for the Eighth Judicial District.

" It is my purpose and desire, and I direct my executors to carry out this suggestion, that my homestead property, on West Main Street, in Ripley, New York, be reserved, for the purposes of this trust, and that the same shall continue to be used, at all times, for a hospital or home for dumb animals, and that there be placed upon the front of the house upon said property, an appropriate sign, containing the following words: ' Hamilton Hospital for Animals.' Payment to the members of this committee, as trustees, as well as to the Executors and trustees, shall be made in accordance with law and the determination of Court."

Marine Trust Company, the corporate executor named, renounced its appointment and letters testamentary were issued to the remaining executor named, Thomas P. Heffernan.

Petitioners contend, with much persuasiveness and ability, that the trust provisions are tainted with illegality in a number of respects. They assert that the trust purposes are not of a nature contemplated under section 11 of the Personal Property Law and section 42 of the Real Property Law as charitable or benevolent; that the trust provisions are void for indefiniteness and embrace commercial purposes and transactions which may be entered into for profit.

The development of judicial doctrine pertaining to charitable trusts through the years presents an interesting chapter in our economic history as is so well set forth in the learned opinion of Surrogate DELEHANTY in *Matter of Browning* (165 Misc. 819, affd. 254 App. Div. 843, affd. 281 N. Y. 577). Our country, he points out, has now developed to a point where antagonism to the creation of trusts and foundations for charitable purposes formerly deemed inimical to our economic status has largely disappeared. That these trusts and foundations have accomplished great good cannot be denied, and the trend of decisions definitely appears to be to foster and encourage liberality in sustaining gifts that can be denominated charitable rather than to pursue a policy of critical restriction. Reference is also made to the article, Our New York System of Charities, by John Godfrey Saxe in the June, 1937, New York State Bar Association Bulletin. It is the duty of the court to uphold the trust, if possible, and not to strain for a construction which would destroy the testator's apparent intent. (*Jacoby* v. *Jacoby*, 188 N. Y. 124; *Matter of Robinson*, 203 N. Y. 380.)

Considered in a broad and general way, is the founding and maintenance of a home or hospital for dumb animals a charitable use? There is ample authority in the affirmative, both here and abroad, although, strangely enough, neither the research of counsel nor my own investigation has unearthed a case where our courts have passed on the question as here presented. Trusts for the lives of definitely designated animals have been nullified as violating the statute against perpetuities, (*Matter of Howells*, 145 Misc. 557; *Matter of Baier*, N. Y. L. J., July 13, 1940, p. 101, col. 6), but they are of no particular value in the decision of the question. The fact that no reported case can be found in this State approximating to any degree the one before us should serve to allay any fear or doubt (as expressed by petitioners) that if trusts of this nature are upheld as chari-

table many testators might follow suit and serious economic harm thereby result. Even if such condition should portend it could be speedily removed by legislative enactment.

We, in common with most, if not all, of the States, do not have a statute of charitable uses such as obtains in England, and even there it is said to have fallen into disuse. (Restatement, Trusts, § 368.) Trusts for the relief of poverty, advancement of education and religion, promotion of health and accomplishment of governmental or municipal purposes have by universal sanction been recognized as valid charitable uses under the principle that their purposes are of such social interest to the community as to justify permitting property to be devoted to the purpose in perpetuity. (Restatement, Trusts, § 368.) The answer to questions such as this do not depend upon the view entertained by any one individual, whether he be the judge or the donor of the gift. It is not the individual view, motive or intent which governs; the test is the benefit to be derived by the public or a considerable portion of it. (*Matter of Everson,* 268 App. Div. 425.) The term " charity ", therefore, cannot be used as a means to devote property in perpetuity to purposes which, while appealing to the donor and perhaps other individuals as proper, are in fact not in their broad and general aspects beneficial to the public interests. To this there must be added the further qualification of conditions prevailing at the time and place the question arises. Thus an object or purpose that might properly be deemed in the public interest at one time and place might concededly fail to meet the test at another. (Restatement, Trusts, § 368.)

As before indicated, there is ample authority in various jurisdictions holding that gifts in perpetuity for the benefit of animals constitute a charitable use. Thus in section 374 of Restatement of the Law of Trusts the general rule is stated to be: " A trust to prevent or alleviate the suffering of animals is charitable. Thus, a trust for the prevention of cruelty to animals, or a trust to establish a home for animals, or a trust for the prevention or cure or treatment of diseases or of injuries to animals, is charitable."

In Corpus Juris (Vol. 11, Charities, § 38), it is said that " a gift is for a charitable purpose when it is intended to relieve the suffering or to increase the comfort and enjoyment of animals ". Similar observations are found in Scott on Trusts (Vol. 3, § 374); in Underhill's Law of Trusts and Trustees (9th ed., p. 63); and in Loring, A Trustee's Handbook (Shattuck's Rev., § 10, p. 33). In Corpus Juris (Vol. 11, Charities, § 38), it

is said that the rule applies " even though there is a possibility that the means provided for the carrying out of the gift may benefit not only animals useful to man *but also animals or birds not useful to him.*" (Emphasis mine.) In Bogert on Trusts and Trustees (Vol. 2, § 379) the author says: " Trusts to prevent cruelty to animals or to provide for their comfort and welfare may be regarded as of an eleemosynary nature, if the animals themselves are considered the ultimate beneficiaries; but it is believed that the true theory of their treatment is that human beings are the real and final beneficiaries of such trusts. It is because these gifts tend to prevent the human degradation which comes from participation in cruelty to animals and from observing suffering among animals that such trusts are regarded as charitable. * * * Trusts to prevent cruelty to any animals, wild or tame, beneficial or harmful to man, are probably charitable, although the actual cases naturally are generally concerned with domestic animals. * * * A trust for the benefit of animals which are useful to mankind has been regarded as charitable, apparently on the theory that there is financial profit to man in keeping domestic animals in good condition, as well as upon the notion that the cultivation of kindness to animals is ennobling to men. Thus gifts to provide homes or food or water for such animals have been held charitable."

Among the specific cases where trusts of this nature have been sustained are *Estate of Coleman* (167 Cal. 212) and *In Re Estate of Graves* (242 Ill. 23) (trusts for erection of animal drinking fountains); *Minns* v. *Billings* (183 Mass. 126) and *Dirlam, exr.,* v. *Morrow* (22 Ohio N. P. [N. S.] 565, affd. 102 Ohio St. 279) (gifts to societies for prevention of cruelty to animals); *Johnston* v. *Colo. Bureau* (86 Col. 221) (bequest for the relief of hungry, thirsty, abused and neglected cattle, horses, dogs and cats). In this latter case the court (p. 225) quoted from Alexander on Wills: " A gift or devise for the benefit of useful animals is for a charitable purpose. Thus a bequest to a city to erect a suitable fountain for the benefit of thirsty animals and birds; a bequest to park commissioners for a fountain with a drinking basin for horses; a bequest for the founding of an institution for the study and care of maladies of quadrupeds or birds useful to man; a bequest to a society to promote prosecution for cruelty to animals; a bequest for the maintenance of starving and forsaken cats; a bequest for the publication of a paper by a society for the prevention of cruelty to animals; a bequest to a home for lost dogs; and for

the suppression and abolition of vivisection, are all for charitable purposes." (See, also, 66 A. L. R. 465, 467.)

The court further said: " Moreover, the policy of this state is in harmony with the view that the humane treatment of dumb animals is for the moral betterment of society, for in 1901 our school laws were so amended as to make it obligatory upon the school authorities to instruct the children on that subject by giving weekly lessons on the humane treatment of animals. S. L. 1901, p. 362."

The last-quoted observation is significant in connection with our Education Law (§ 275, subd. 10; § 310, subd. 5), prescribing as the duty of trustees and boards of education to provide instruction " in the humane treatment and protection of animals and birds." Our State also authorizes the incorporation of societies for the prevention of cruelty to animals (Membership Corporations Law, § 11) and the acceptance of bequests by them has been sanctioned. A board of supervisors in a county where there is a society for the prevention of cruelty to animals is given authority to appropriate public money in support of such a society. (County Law, § 12, subd. 30.) In England gifts of this nature have apparently been long considered as charitable as is gathered from the case of *In Re Grove-Grady* ([1929] 1 Ch. 557) reported as the text case in 66 American Law Reports 448 where the subject is extensively annotated (66 A. L. R. 465).

Apart from mere factual and legal precedent and as a matter of first impression, the benefit to society generally of a home or hospital for animals cannot be well challenged. Aside from their humanitarian aspects, trusts of this nature have inherent economic potentials. I apprehend that most of our agricultural States maintain veterinary colleges or at least experimental stations. Here in New York State we appropriate large sums for the Veterinary College at Cornell for the purpose, among others, of giving instruction in " the pathology, prevention and treatment of animal diseases, and in all matters pertaining to sanitary science as applied to live stock and correlatively to the human family." (Education Law, § 1038, subd. 1.) Any institution having among its other legal attributes that of the hospitalization and treatment of domestic animals, particularly in this dairying community, with the natural accompaniment of clinics and opportunity for study and research can be of inestimable benefit to the animal industry and mankind in general for the two are inseparably associated.

The weight of authority generally, the trend of judicial decisions and legislative enactments in this State, and other considerations as noted, lead to the conclusion that trusts for providing a home or hospital for the care and comfort of dumb animals is a valid charitable use. It follows, therefore, that, unless there are other elements here present rendering the attempted disposition illegal, the trust should be sustained.

It is argued that the proposed trust is void for indefiniteness and embracing commercial purposes and transactions which may be entered into for profit. The principal authority relied upon is *Matter of Shattuck* (193 N. Y. 446), a case which " recurrently plagues the trial courts when they are construing particular language of a testator." It has been " shaken " and distinguished although not expressly overruled, and limited in application to its own facts. (*Matter of Browning,* 165 Misc. 819, 824, *supra.*) Subsequent decisions of our highest and intermediate appellate courts have so circumscribed its application as to render it almost of no value as a precedent in a general sense. The more modern and enlightened trend is well exemplified in *Matter of Durbrow* (245 N. Y. 469, 473) involving construction of a will directing the executors to distribute the estate where, in their judgment, they " shall consider it will be most effective in the advancement of Christ's Kingdom on earth." In upholding the gift the court, Judge POUND writing, propounded a rule which may well serve to guide us here. It is there stated on pages 474–475: " The intention to make a gift for charitable and religious purposes pervades and dominates the whole bequest and the court will give it effect, if it is possible so to do by the application of the most liberal rules of construction that the law will permit. (*Harrington* v. *Pier,* 105 Wis. 485.) If, however, the gift thus sought to be established, as distinguished from its beneficiaries, is so indefinite and uncertain as to include uses which are not in a broad sense charitable and religious, but may be personal, private or selfish in their character, its benevolent purpose will not save it. (*Matter of Cunningham,* 206 N. Y. 601, 605; *Matter of Frasch,* 245 N. Y. 174, 182.) If, on the other hand, a definite charitable purpose may be found within the limits of a testator's language; if, for example, it is reasonably clear that a testator had in mind that his bequest should be devoted only to purposes of Christian charity, his language should be construed in a broad and liberal spirit in accordance with his intention and the gift upheld, although the will may be susceptible of a construction which would permit the gift to be used for private or secular purposes.

(*Gill* v. *Atty.-Gen.,* 197 Mass. 232; *Matter of Robinson,* 203 N. Y. 380; *Matter of Cunningham, supra; Matter of MacDowell,* 217 N. Y. 454; *Butterworth* v. *Keeler,* 219 N. Y. 446; *Matter of Morris,* 227 N. Y. 141, 144; *Matter of Frasch, supra.*) "

The gift of Mrs. Hamilton as expressed in her will meets and fulfills the requirements of a valid charitable gift as set forth by Judge POUND. She dedicates its use to found and maintain " an animal home or hospital * * * for the care and comfort of such animals " as her trustees or committee shall determine. In planning for the use of her fortune, Mrs. Hamilton (and her husband contingently before her), significantly placed no limitation on the objects or objectives contemplated. She left it entirely to the committee to decide what animals the facilities of the home or hospital should be utilized for, thus removing any possibility that the change of time might render obsolete any expressed definite limitations. Had the object of her bounty been intended to be only cats or dogs or other pets, she would certainly have so provided, for that would have been one of the thoughts uppermost in her mind. In simple justice to her we must, it seems to me, construe the term " animals " as used by her to include not only pets but domestic animals in general, including livestock as well, and by the same token, inferentially at least, exclude the idea, as suggested by petitioners, of founding a haven for the beasts and reptiles of the field and jungle. The charitable purpose of testatrix pervades and dominates the whole bequest. " Broadness of scope and generality of purpose do not in themselves breed impossibility of execution "; (*Matter of Durbrow, supra,* p. 475), and no good reason exists here why this gift is not capable of being executed by judicial decree should that become necessary in the course of the administration of the trust. Furthermore, the Attorney-General, who has the duty of enforcing uncertain and indefinite charitable trusts, is a party to this proceeding and is under the continuing obligation of seeing that its provisions are carried out within the meaning and intent of the gift.

We need have little concern with the possibility of the gift's being perverted to commercial or selfish uses. Such use is patently not contemplated by the terms of the gift and the fact that its administration is at all times subject to scrutiny and action by the Attorney-General or any other person, coupled with the high character and responsibility of those delegated to execute it, are sufficient guarantee of integrity of administration. As pointed out by the Attorney-General, this objection could be advanced against nearly any trust established to collect

and receive income. While, of course, one can see the possibility of profit in an animal hospital there can be discerned nowhere within this will or outside of it any intent that the trustees are to make a profit, for there is no provision as to where the profit, if any, should go. (*Butterworth* v. *Keeler,* 219 N. Y. 446.) Even if the terms of the gift are susceptible of more than one construction " a construction which is fairly within the rules of law and that sustains the trust and devotes the fund included therein to purposes permitted by law and to the good of humanity should be preferred." (*Matter of Robinson,* 203 N. Y. 380, 388, *supra.*)

The uses to which the gift may be extended under the terms of the will are for future cognizance. How far testatrix personally intended the activities of the home and hospital to go does not appear nor was there any evidence along this line offered. While the reception of testimony offered by the executor and Attorney-General as bearing on intent and the possibilities of the trust was perhaps unduly restricted, nevertheless I fail to see how any amount of evidence could do more than affirm her amply expressed intention as found in the will itself. In the absence of ambiguity the will is where the motive and intent are to be found. Here there is no ambiguity. The mere fact that Mrs. Hamilton saw fit to dedicate such a substantial amount to this project furnishes the most cogent proof imaginable that she intended the home and hospital to be commensurate with and to fulfill all the functions inherent to their establishment. To what extent that use may eventually be applied is not now before us. Nor can we now say that the amount of the gift is out of proportion to the beneficial objects susceptible of attainment, and even if this were so it would not invalidate the gift. (*Matter of Morris,* 227 N. Y. 141; *Matter of Merritt,* 254 App. Div. 292.)

Neither can the possibility, remote as it may be, that the homestead property will, for any reason, prove unsuitable as a location for animal home or hospital be considered as a valid objection. (*Matter of Swan,* 237 App. Div. 454.) As the court there said (p. 460): " Of course, testator's wishes should be respected and carried out so far as possible, but a sensible and businesslike view must be taken of these matters." The court there affirmed an order authorizing the use of trust income for the care of indigent beneficiaries in private homes and institutions rather than to maintain them in the " Swan Homestead " as directed by the will.

The gift being for a valid charitable use, and there being no considerations militating against the carrying out of its provisions, a decree may be submitted on notice construing the will in conformity with this decision.